## SEGAL, DBA SEGAL COTTON PRODUCTS, ET AL. *v.* ROCHELLE, TRUSTEE IN BANKRUPTCY.

No. 44.   Argued November 17, 1965.—Decided January 18, 1966.

*Henry Klepak* argued the cause and filed a brief for petitioners.

*William J. Rochelle, Jr.,* argued the cause *pro se.* With him on the brief was *Marvin S. Sloman.*

MR. JUSTICE HARLAN delivered the opinion of the Court.

This case, presenting a difficult question of bankruptcy law on which the circuits have differed, arises out of the following facts. On September 27, 1961, voluntary bankruptcy petitions were filed in a federal court in Texas by Gerald Segal, Sam Segal, and their business partnership, Segal Cotton Products. A single trustee, Rochelle, was designated to serve in all three proceedings. After the close of that calendar year, loss-carryback tax refunds were sought and obtained from the United States on behalf of Gerald and Sam Segal under Internal Revenue Code § 172. The losses underlying the refunds had been suffered by the partnership during 1961 prior to the filing of the bankruptcy petitions; the losses were carried back to the years 1959 and 1960 to offset net income on which the Segals had both paid taxes. By agreement, Rochelle deposited the refunds in a special account, and the Segals applied to the referee in bankruptcy to award the refunds to them on the ground that bankruptcy had not passed the refund claims to the trustee.

Concluding that the refund claims had indeed passed under § 70a (5) of the Bankruptcy Act [1] as "property . . . which prior to the filing of the petition . . . [the bankrupt] could by any means have transferred," the referee denied the Segals' application. The District Court affirmed the denial, and the Segals and their partnership appealed to the Court of Appeals for the Fifth Circuit.[2] That court too rejected the Segals' contention.

As the Court of Appeals here recognized, the Court of Appeals for the First Circuit in *Fournier* v. *Rosenblum,* 318 F. 2d 525, and the Court of Appeals for the Third Circuit in *In re Sussman,* 289 F. 2d 76, have both ruled squarely that a bankrupt's loss-carryback refund claims based on losses in the year of bankruptcy do not pass to the trustee but instead the bankrupt is entitled to the refunds when they are ultimately paid. Concededly, under § 70a (5) the trustee must acquire the bankrupt's "property" as of the date the petition is filed and property subsequently acquired belongs to the bankrupt. See note 1, *supra;* 4 Collier, Bankruptcy ¶ 70.09 (14th ed. 1962). Since the tax laws allow a loss-carryback refund claim to be made only when the year

---

[1] 30 Stat. 565, as amended, 11 U. S. C. § 110 (a)(5) (1964 ed.). In relevant part that section provides: "(a) The trustee of the estate of a bankrupt . . . shall . . . be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition initiating a proceeding under this title, except insofar as it is to property which is held to be exempt, to all of the following kinds of property wherever located . . . (5) property, including rights of action, which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded, or sequestered . . . ."

[2] The wife of Gerald Segal and the estate of the deceased wife of Sam Segal had unsuccessfully urged before the referee their own contingent rights to half the refunds, but review on this issue was not sought.

has closed, see I. R. C. §§ 172 (a), (c), 6411, both the First and Third Circuits reasoned that prior to the year's end a loss-carryback refund claim was too tenuous to be classed as "property" which would pass under § 70a (5). Alternatively, the Third Circuit stated that because of the federal anti-assignment statute,[3] inchoate refund claims were not in any event property "which prior to the filing of the petition . . . [the bankrupt] could by any means have transferred," as § 70a (5) also requires. Both circuits felt the result to be unfortunate, not least because the very losses generating the refunds often help precipitate the bankruptcy and injury to the creditors, but both believed the statutory language left no option.

After detailed discussion of the problems, the Court of Appeals in this case resolved that the loss-carryback refund claims were both "property" and "transferable" at the time of the bankruptcy petition and hence had passed to the trustee. 336 F. 2d 298. We granted certiorari because of the conflict and the significance of the issue in bankruptcy administration.[4] 380 U. S. 931.

---

[3] Rev. Stat. § 3477, as amended, 31 U. S. C. § 203 (1964 ed.). The section, so far as relevant, states: "All transfers and assignments made of any claim upon the United States, or of any part or share thereof, or interest therein, whether absolute or conditional, and whatever may be the consideration therefor . . . shall be absolutely null and void, unless they are freely made and executed in the presence of at least two attesting witnesses, after the allowance of such a claim, the ascertainment of the amount due, and the issuing of a warrant for the payment thereof."

[4] Considerable commentary has been directed to the problem. Practically all the writers agree that it is desirable for the trustee to receive the refunds although a minority contend that existing law will not permit this result. See Herzog, Bankruptcy Law—Modern Trends, 36 Ref. J. 18 (1962); 60 Nw. U. L. Rev. 122 (1965); 40 Notre Dame Law. 118 (1964); 14 Stan. L. Rev. 380 (1962); 40 Tex. L. Rev. 569 (1962); 42 Tex. L. Rev. 542 (1964); 17 U. Fla. L. Rev. 241 (1964); 16 U. Miami L. Rev. 345 (1961); 110 U. Pa. L. Rev. 275 (1961).

Conceding the question to be close, we are persuaded by the reasoning of the Fifth Circuit and we affirm its decision.

## I.

We turn first to the question whether on the date the bankruptcy petitions were filed, the potential claims for loss-carryback refunds constituted "property" as § 70a (5) employs that term. Admittedly, in interpreting this section "[i]t is impossible to give any categorical definition to the word 'property,' nor can we attach to it in certain relations the limitations which would be attached to it in others." *Fisher* v. *Cushman,* 103 F. 860, 864. Whether an item is classed as "property" by the Fifth Amendment's Just-Compensation Clause or for purposes of a state taxing statute cannot decide hard cases under the Bankruptcy Act, whose own purposes must ultimately govern.

The main thrust of § 70a (5) is to secure for creditors everything of value the bankrupt may possess in alienable or leviable form when he files his petition. To this end the term "property" has been construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed. *E. g., Horton* v. *Moore,* 110 F. 2d 189 (contingent, postponed interest in a trust); *Kleinschmidt* v. *Schroeter,* 94 F. 2d 707 (limited interest in future profits of a joint venture); see 3 Remington, Bankruptcy §§ 1177–1269 (Henderson ed. 1957). However, limitations on the term do grow out of other purposes of the Act; one purpose which is highly prominent and is relevant in this case is to leave the bankrupt free after the date of his petition to accumulate new wealth in the future. Accordingly, future wages of the bankrupt do not constitute "property" at the time of bankruptcy nor, analogously, does an intended bequest to him or a promised gift—even though state law might permit all of these

to be alienated in advance. *E. g., In re Coleman,* 87 F. 2d 753; see 4 Collier, Bankruptcy ¶¶ 70.09, 70.27 (14th ed. 1962). Turning to the loss-carryback refund claim in this case, we believe it is sufficiently rooted in the pre-bankruptcy past and so little entangled with the bankrupts' ability to make an unencumbered fresh start that it should be regarded as "property" under § 70a (5).

Temporally, two key elements pointing toward realization of a refund existed at the time these bankruptcy petitions were filed: taxes had been paid on net income within the past three years, and the year of bankruptcy at that point exhibited a net operating loss. The Segals stress in this Court that under the statutory scheme no refund could be claimed from the Government until the end of the year, but as cases already cited indicate, postponed enjoyment does not disqualify an interest as "property." That earnings by the bankrupt after filing the petition might diminish or eliminate the loss-carryback refund claim does further qualify the interest, but we have already noted that contingency in the abstract is no bar and the actual risk that the refund claims may be erased is quite far from a certainty.[5] Unlike a pre-bankruptcy promise of a gift or bequest, passing title to the trustee does not make it unlikely the gift or bequest will be effected. Nor does passing the claim hinder the bankrupt from starting out on a clean slate, for any administrative inconvenience to the bankrupt will not be prolonged, see 110 U. Pa. L. Rev., at 279-280, and the bankrupt without a refund claim to preserve has more reason to earn income rather than less.

---

[5] So far as losses by the bankrupt after filing but before the year's end might increase the refund—a situation not claimed to be present in this case—the Court of Appeals suggested "[a] proration of the refund in the ratio of the losses before and after the filing date would be indicated . . . ." 336 F. 2d, at 302, n. 5.

We are told that if this loss-carryback refund claim is "property," that label must also attach to loss-carryovers, that is, the application of pre-bankruptcy losses to earnings in future years. Since losses may be carried forward five years and in some cases even seven or ten years, I. R. C. §§ 172 (b)(1)(B)–(D), great hardship for the estate is foreseen by petitioners in keeping it open for this length of time. While in fact the trustee can obviate this detriment to the estate—by selling a contingent claim in some instances or simply forgoing it—inconvenience and hindrance might be caused for the bankrupt individual. Without ruling in any way on a question not before us, it is enough to say that a carryover into post-bankruptcy years can be distinguished conceptually as well as practically. The bankrupts in this case had both prior net income and a net loss when their petitions were filed and apparently would have deserved an immediate refund had their tax year terminated on that date; by contrast, the supposed loss-carryover would still need to be matched in some future year by earnings, earnings that might never eventuate at all.

## II.

Having concluded that the loss-carryback refund claims in this case constituted "property" at the time of the bankruptcy petitions, it remains for us to decide whether in addition they were property "which prior to the filing of the petition . . . [the bankrupt] could by any means have transferred . . . ."[6] The prime ob-

---

[6] The "choice of law" rules relevant to this question are not in dispute. What would constitute a "transfer" is a matter of federal law. 4 Collier, Bankruptcy ¶ 70.15, at 1035–1036 and n. 25 (14th ed. 1962). Whether an item could have been so transferred is determined generally by state law, save that on rare occasions overriding federal law may control this determination or bear upon it. *Id.*, at 1034–1035 and n. 22. The Segals were Texas residents, the business was apparently based in Texas, and the bankruptcy court was located there; no other State's law is claimed to be relevant.

stacle to an affirmative answer is 31 U. S. C. § 203, which renders "absolutely null and void" all transfers of any claim against the United States unless among other conditions the claim has been allowed and the amount ascertained. See n. 3, *supra*. Plainly since the tax laws calculate the refund only on the full year's experience after the year has closed, the claims in the present instance could not have been allowed or ascertained at the time the petitions were filed.

The respondent argues that the transferability requirement of § 70a (5) can be met by relying on the long-established rule that § 203 does not apply to prevent transfers by "operation of law." See *United States* v. *Aetna Surety Co.*, 338 U. S. 366, 373–374; *Goodman* v. *Niblack*, 102 U. S. 556, 560.[7] The phrasing of § 70a (5), however, suggests that it contemplates a voluntary transfer and is not satisfied simply because property could have been transferred by operation of law, such as by death, bankruptcy, or judicial process. Not only is there practically no form of property that would not be transferable under the broader reading, but such a reading also makes redundant the alternative route for complying with § 70a (5) through showing that the property "might have been levied upon and sold under judicial process . . . ."[8] Admittedly, the Bankruptcy Act defines the word "transfer" in its general definitional section to include at least certain transfers that are "invol-

---

[7] This exception is the simplest reason why § 203 does not interfere with the vesting in the trustee of property coming within § 70a (5), for all transfers under § 70a are explicitly by "operation of law," see n. 1, *supra;* but of course property must still qualify as transferable within the meaning of § 70a (5).

[8] See n. 1, *supra.* The respondent has not argued that under Texas law the Segals' inchoate refund claims would be subject to such judicial process, and apparently in Texas the claims' contingent status would render this argument quite doubtful. See 26 Tex. Jur. 2d, Garnishment § 17 (1961), and cases there cited.

untary," [9] but legislative history indicates that the introduction of this latter term into the Act 40 years after its framing was not aimed at § 70a (5) at all. See H. R. Rep. No. 1409, 75th Cong., 1st Sess., p. 5; Analysis of H. R. 12889, 74th Cong., 2d Sess., p. 7 (House Judiciary Comm. Print).

Difficulty in defining the term "transfer" is enhanced by the absence of any explanation for Congress' having made transferability a condition in the first place. Bankruptcy Acts prior to the present one enacted in 1898 had no like limitation on the trustee's succession to property, see Bankruptcy Acts of 1867, § 14, 14 Stat. 522; of 1841, § 3, 5 Stat. 442; and of 1800, §§ 5, 13, 2 Stat. 23, 25, and under the predecessor Act claims against the Government passed without impediment to the trustee. See, e. g., Erwin v. United States, 97 U. S. 392. This history and the chance that the 1898 limitation sought only to respect state policies against alienating property such as a contingent remainder or spendthrift trust fund argue for flatly ignoring the limitation in this instance. See 14 Stan. L. Rev., at 383–386. Nevertheless, we have been shown no legislative history on the point, and an uncertain guess at Congress' intent provides dubious ground for disregarding its plain language. In any event, we are not prepared to accept this argument, just as we cannot now go beyond a narrow definition of the term "transfer," in a case in which these points have not been thoroughly briefed by the parties.

---

[9] Bankruptcy Act § 1 (30), as amended by the Chandler Act, 52 Stat. 842, as amended, 11 U. S. C. § 1 (30) (1964 ed.), pertinently reads: " 'Transfer' shall include the sale and every other and different mode, direct or indirect, of disposing of or of parting with property or with an interest therein or with the possession thereof or of fixing a lien upon property or upon an interest therein, absolutely or conditionally, voluntarily or involuntarily, by or without judicial proceedings, as a conveyance, sale, assignment, payment, pledge, mortgage, lien, encumbrance, gift, security, or otherwise . . . ."

The Court of Appeals determined that despite § 203 a sufficient voluntary transfer of the loss-carryback refund claim could have been made prior to bankruptcy to satisfy § 70a (5), and on balance we share this view. In *Martin* v. *National Surety Co.,* 300 U. S. 588, 596, a unanimous Court held that § 203, in spite of its broad language, "must be interpreted in the light of its purpose to give protection to the Government" so that between the parties effect might still be given to an assignment that failed to comply with the statute. The opinion reasoned that after claims have been collected by the assignor, requiring compliance with the invalid assignment by transfer of the recovery to the assignee presented no danger that the Government might become "embroiled in conflicting claims, with delay and embarrassment and the chance of multiple liability." 300 U. S., at 594. While other circumstances encouraged *Martin* to uphold the assignment and this Court has not faced the problem head-on since that time, we find no reason to retreat now from the basic holding in *Martin* which was both anticipated and followed by a number of other courts, state and federal. See *California Bank* v. *United States Fid. & Guar. Co.,* 129 F. 2d 751; *Royal Indem. Co.* v. *United States,* 93 F. Supp. 891; *Leonard* v. *Whaley,* 91 Hun 304, 36 N. Y. Supp. 147; Ann., 12 A. L. R. 2d 460, 468–475 (1950). Among these States is Texas, whose precedents leave little doubt that an assignment of the claims at issue would be enforced in equity in the normal case. *Trinity Univ. Ins. Co.* v. *First State Bank,* 143 Tex. 164, 183 S. W. 2d 422; see *United Hay Co.* v. *Ford,* 124 Tex. 213, 76 S. W. 2d 480 (dictum).

It should not be pretended that this contemplated "transfer" is one in the fullest sense that term permits. For example, this Court has ruled that one holding a claim invalidly assigned under § 203 may not sue the Government upon it though he join his assignor as well.

*United States* v. *Shannon,* 342 U. S. 288.   Yet it remains true that a Texas court of equity could and would compel the assignment of any refund received, if indeed it might not try to compel a reluctant assignor to collect the claim or make it over by a valid assignment when that became possible.   This, we believe, suffices to make the Segals' claims transferable within the meaning of § 70a (5).   Cf. 4 Collier, Bankruptcy ¶ 70.37, at 1293, n. 6 (14th ed. 1962).

*Affirmed.*