**In re GREER STUMP PLUMBING, INC., an Arizona Corporation, Debtor.**

**Herman MIDDLETON, Trustee, Plaintiff,**

v.

**PLUMBING AND AIR CONDITIONING CONTRACTORS ASSOCIATION OF ARIZONA, an Unincorporated Association, and the Arizona State Compensation Fund, an agency of the State of Arizona, Defendant.**

**Bankruptcy No. 79–2203 PHX VM.**
**Adv. No. 80–0705 VM.**

United States Bankruptcy Court,
D. Arizona.

Feb. 17, 1981.

**182**

Gerald Gaffaney, Phoenix, Ariz., for trustee.

Susan Clark and John Frank, Phoenix, Ariz., for Plumbing & Air Conditioning.

## MEMORANDUM DECISION

### STATEMENT OF FACTS

VINCENT D. MAGGIORE, Bankruptcy Judge.

The debtor in this case, Greer-Stump Plumbing, Inc., has been engaged in the plumbing business in Arizona. It has been a member of the Plumbing and Air Condi-tioning Contractors Association of Arizona (PAC), one of the defendants in this action.

As a plumbing contractor, the debtor was subject to the workman's compensation laws of the State of Arizona. The State Compensation Fund (Fund), the stakehold-ing defendant here, offers a plan whereby members of an association such as PAC may, in addition to maintaining an individu-al policy of workmen's compensation insur-ance with the Fund, participate through their association in what is known as an Association Dividend Plan. The purpose of the Association Dividend Plan is the reduc-tion of work injuries through the joint ef-forts of the association, the Fund and the individual contractors; reduction of the cost of workmen's compensation insurance; and strengthening the relationship between the association and its membership.

When the combined efforts of the indi-vidual contractors, and the association, pro-duce a successful record for a given year, the Fund may declare what is known as a bonus dividend.

In the instant case, the Fund has declared a bonus dividend to PAC.

PAC elected, in agreement with the Fund, to give pro rata shares of the bonus dividend to the various members uniformly. However, on August 12, 1980, in the light of this bankruptcy, PAC varied its procedure, electing to retain the bonus dividend appli-cable to the debtor and so advised the Fund.

The matter was initially taken to the state Superior Court on an Application for Special Action by PAC directed to the Fund, noticing the Trustee so that he could participate if he desired. The Trustee chose to bring the matter here, and this Court took jurisdiction to determine the rights of the parties in respect to this sum.

Greer filed its bankruptcy petition on Oc-tober 1, 1979.

The bonus dividend which is the subject of this adversary proceeding is for the twelve-month period ending September 30, 1979.

In this case PAC and the Trustee both claim these monies, and the Fund, there-

fore, has held them pending resolution of the question of right.

## QUESTION PRESENTED

Section 541(a)(1) of the Bankruptcy Code provides that property of the debtor's estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." Under this provision, is the bonus dividend property of the debtor's estate?

## DISCUSSION

PAC has propounded a number of arguments and rhetorical questions that should be addressed in disposing of this issue.

The principal arguments relied upon by PAC were:

(1) PAC had, at all relevant times, absolute and unbounded discretion to use the bonus dividend, pursuant to an allegedly absolute assignment of that bonus dividend from the debtor to PAC. In oral argument counsel for PAC stated that PAC could, in its absolute discretion, retain all of the bonus dividend fund or present every bonus dividend for a particular year to only one participating member of its association.

(2) The debtor had no contract right to receive the bonus dividend. PAC stated, in its opening memorandum, that "It is up to the Trustee to point to that document which creates a contract right in the debtor to these dollars. If he can point to such a document and persuade the Court that this is a contract right, then we concede the issue; let the dollars go to the debtor's estate."

(3) As PAC concluded its opening memorandum, "If the Fund and PAC and the debtor were deliberately trying to create an arrangement whereby these dividends would be the property of PAC, to be disbursed by PAC at its discretion, what form of words could more explicitly do this than the words actually in these documents?"

The first argument of PAC, that it has absolute and unbounded discretion, is entirely unsupported by the facts of this case. PAC was bound by its contract with the State Compensation Fund (clause 8(a)) to distribute the bonus dividend only "in accordance with an established SCF distribution plan."

The assertion of absolute, unbounded discretion in distribution of the bonus dividend could only be supported by an analysis that focused on the assignment clause of the contract between PAC and Greer to the exclusion of any other contractual provision before this Court. Such a limited, unnatural reading of the documents would result in a frustration of the reasonable expectations of the parties and the unjust enrichment of PAC.

Two documents before this Court explicitly limit the discretion of PAC as to bonus dividends. One is the contract between PAC and the State Compensation Fund, which states in paragraph 8(a) that distributions of bonus dividends shall be in accordance with established State Compensation Fund distribution plans. The other document is entitled the "Association Dividend Distribution Instruction/Options", in which the State Compensation Fund provided the various options from which PAC was permitted to select a method of distribution.

Sometime prior to August 12, 1980, PAC advised the State Compensation Fund that PAC had selected Plan A with option .01 as its method of dividend distribution. In relevant part, that plan provides for "all dividends distributed to participating members."

The above-mentioned documents, in conjunction with the choice of limited options of distribution made by PAC, refute the claim of PAC to unfettered discretion. PAC could only distribute dividends *in accordance with an established plan.* PAC chose an established plan that provided for distribution of all dividends to participating members.

At all times material hereto, Greer paid premiums to and maintained a policy of

workman's compensation insurance on its employees with the Fund, and Greer-Stump, Inc., was therefore a "participating member" for purposes of distribution under Plan A.

█ For the above reasons, PAC was bound to distribute the bonus dividend to Greer-Stump, Inc., and PAC's assertion of absolute discretion was unsupportable. Greer-Stump, Inc., was a third-party beneficiary of the contract between PAC and the State Compensation Fund; the debtor was not merely an incidental beneficiary, but was one (among others) for whose express benefit the contract was created.

Arguments (1) and (2) of PAC have been answered with the finding and conclusion that Greer-Stump, Inc., was truly a third-party beneficiary.

This Court is persuaded that the attorney for the trustee has pointed to documents which create contract rights in the debtor and that therefore, the fund is part of the debtor's estate.

As to the question with which PAC chose to close its opening memorandum (what form of words could more explicitly have made PAC the owner of the dividends, such dividends to be distributed at PAC's discretion) the answer is simple.

To have made the assignment and discretion absolute, those clauses which *conditioned* the assignment and distribution (clause 8(a) of the contract between PAC and the State Compensation Fund, and Plan (A)) should have been excluded.

More simply, PAC had the option of choosing Plan B ("The Association will retain a portion of "Bonus" dividend with balance distributed to members"), which would have had the effect of giving PAC almost the unbounded discretion it has so ably claimed in this case.

In reaching our decision, we have been influenced by our perception of the reasonable expectations of the parties involved.

█ This Court takes judicial notice that the official promotional material contained in the State Compensation Fund "Associa-tion Dividend Plan Procedures Guide" at Section 3 (Marketing) is designed to give a prospective member the impression that the assignment of dividends is merely a formality for computation purposes. A representative exchange appears in a section entitled "Questions and Answers":

3.  Q.  Does the Enrollment/Assignment Form legally assign my dividends to the Association?
    A.  Yes. This is the only method whereby the State Compensation Fund can legally *compute* combined premiums and losses as one large policy. Your individual dividend is protected by written agreement with your association (emphasis added).

Materials of the type quoted above, and the fact that PAC has never before this time elected to retain all or part of bonus dividends applicable to a member filing bankruptcy or ceasing operations, makes it clear that members were encouraged to join the Association with the clear implication that the assignment of funds to PAC was a formality.

This decision was also influenced by *Segal v. Rochelle*, 382 U.S. 375, at 379, 86 S.Ct. 511, at 514, 15 L.Ed.2d 428 (1966), in which the United States Supreme Court stated:

We turn first to the question whether on the date the bankruptcy petitions were filed, the potential claims for loss-carryback refunds constituted "property" as section 70a(5) employs that term. Admittedly, in interpreting this section "(i)t is impossible to give any categorical definition to the word 'property', nor can we attach to it in certain relations the limitation which would be attached to it in others".
*Fisher v. Cushman*, 103 F. 860, 864. Whether an item is classed as "property" the Fifth Amendment's Just-Compensation Clause or for the purpose of a state taxing statute cannot decide hard cases under *the Bankruptcy Act, whose own purposes must ultimately govern. The main thrust of Section 70a(5) is to secure for creditors everything of value the bankrupt may possess in alienable or levi-*

*able form when he files his petition. To this end the term "property" has been construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed.* E.g., *Horton v. Moore,* 100 F.2d 189 (contingent, postponed interest in a trust); *Kleinschmidt v. Schroeter,* 94 F.2d 707 (limited interest in future profits of a joint venture); see 3 Remington, Bankruptcy Sections 1177–1269 (Henderson ed. 1957). However, limitations on the term do grow out of other purposes of the Act; one purpose which is highly prominent and is relevant in this case is to leave the bankrupt free after the date of his petition to accumulate new wealth in the future. Accordingly, future wages of the bankrupt do not constitute "property" at the time of bankruptcy nor, analogously, does an intended bequest to him or a promised gift—even though state law might permit all of these to be alienated in advance. E.g. ... *In re Coleman,* 87 F.2d 753, see 4 Collier, Bankruptcy paragraphs 70.09, 70.-27 (14th ed. 1962). *Turning to the loss-carryback refund claim in this case, we believe it is sufficiently rooted in the pre-bankruptcy past and so little entangled with the bankrupts' ability to make an unencumbered fresh start that it should be regarded as 'property' under Section 70a(5)."* (Emphasis added).

■ From the foregoing, it is clear that an interest in property does not fall outside the Trustee's grasp simply because it is "novel or contingent or because enjoyment must be postponed". In order to determine whether Greer's bonus dividend is property, the Supreme Court in *Segal* suggests looking to see if Greer's future contingent right to the bonus dividend had any value to Greer in "alienable or leviable form" when Greer filed its bankruptcy petition.

■ Even though Greer's interest in the bonus dividend was contingent as of the date it filed its bankruptcy petition, Greer clearly could have transferred its contingent interest in the bonus dividend prior to all of the contingencies being satisfied.

The issue of whether or not an interest in property is alienable, as that term is used in section 70(a) of the Bankruptcy Act, is discussed at length by the Supreme Court in *Segal* in pages 381 through 385 of its opinion. Based upon the Supreme Court's analysis on this point, there can be no question but that Greer had the power to alienate or transfer its contingent interest in the bonus dividend prior to all of the contingencies being met.

Not only was Greer's interest in the bonus dividend alienable, it was also in "leviable form" when Greer filed its bankruptcy petition. Both the Assignment between Greer and PAC and the Agreement between PAC and the FUND provide that the FUND may levy upon Greer's bonus dividend to satisfy any unpaid premiums that were due the FUND from Greer at the time the dividend was declared. Paragraph 4 of the "Assignment" provides as follows:

(4) Dividends payable to a participating member, including the amount of "bonus" dividend, if any, shall be credited by SCF against the amount of any unpaid premium indebtedness of the member before any portion of the member's individual or "bonus" dividend entitlement shall be paid to the member by either SCF of the Association.

and paragraph 6 of the Agreement provides as follows:

(6) Dividends payable to a participating member, including the amount of "bonus" dividend, if any, payable to the member under the distribution plan selected by the Association, shall be credited by SCF against the amount of the member's unpaid premium indebtedness to SCF before any portion of the member's individual or "bonus" dividend entitlement shall be paid to the member by either SCF of the Association.

Since the interest of Greer-Stump, Inc., was both in leviable form and alienable, this Court believes that the money in dispute is property of the estate within the description of that term at 11 U.S.C. § 541.

It should be noted that while *Segal* interprets 70a(5) of the Old Bankruptcy Act, the

concept of property of the estate has been greatly broadened by Section 541 of the Bankruptcy Reform Act, and the legislative history of that section explicitly states that the result of *Segal* is followed by the Reform Act (*See* H. Rept. No. 95–595, p. 367, U.S. Code Cong. & Admin. News 1978, p. 5787).

Based on all of the foregoing, this Court finds that the "bonus dividend" of $9,711.00 is property of the bankruptcy estate of Greer-Stump, Inc.