In re **FLOWERS, DEVERELL AND CRAWFORD**, Debtor in Chapter 7.

**UNITED STATES of America, Plaintiff,**

v.

**Freeman C. MARR, Trustee for Debtor-Defendant.**

**Bankruptcy No. 85–20353.**
**Adv. No. 86–0120.**

United States Bankruptcy Court, W.D. Tennessee, W.D.

Oct. 30, 1986.

Gary A. Vanasek, for U.S.

Robert Frisby, for U.S. Dept. of Agriculture.

Michael P. Coury, for Trustee, Freeman C. Marr, Trustee in Bankruptcy.

WILLIAM B. LEFFLER, Bankruptcy Judge.

This cause is before the Court on the Trustee's Objection To the Asserted Priority Claim by the United States of America, on behalf of The Cotton Board, of $130,-861.20. At issue is whether the funds claimed by the Cotton Board (Board) are property of the estate and, if so, whether the claim is entitled to priority status. This is a case of first impression in this District.

Flowers, Deverell and Crawford (the Debtor), a partnership, filed for protection with this Court under Chapter 7 of the Bankruptcy Code on January 25, 1985. Prior to that time it was in the cotton brokerage business.

According to the record and able briefs submitted by counsel for both parties, the Board is asserting its claim pursuant to 7 U.S.C. § 2101, *et seq.*, the Cotton Research and Promotion Act (Act). The purpose of this Act is the establishment of a funding scheme to promote research and expand competitive markets for cotton. This purpose is accomplished through the voluntary assessment of $1.00 per bale of cotton sold by cotton producers plus a fractional supplemental assessment on all cotton harvested in the United States. Upon the purchase of bales of cotton from producers, firms designated as "collecting handlers" deduct from the purchase price paid the producers the amount of the assessment. These collecting handlers then remit the collected assessments to the Board for implementation of the Act's purposes. Should a producer not want to participate in the program (s)he may apply to the Board for a refund within 90 days after the assessments are collected. The Board must refund such assessments within 60 days after the refund application is received whether or not the collecting handler has remitted same to the Board. The Act does not require the collecting handler to maintain a separate account for the collected assessments.

The amount claimed by the Board in this proceeding consists of assessments allegedly collected by the Debtor between November 1, 1984 and January 21, 1985. The parties have stipulated to the following pertinent facts.

At all times material to this proceeding, the Debtor was a "collecting handler" as defined in the Cotton Research and Promotion Order, 7 C.F.R. §§ 1205.301–1205.-342, and The Cotton Board Rules and Regulations, 7 C.F.R. §§ 1205.500–1205.540, promulgated under the Cotton Research and Promotion Act. As a collecting han-

dler, the Debtor was obliged to collect assessments from cotton producers and remit these assessments to the Board, 7 C.F.R. §§ 1205.512–1205.514. The Debtor withheld a portion of the purchase price per bale from each producer in order to meet its obligation to remit the assessment to the Board as required by the Order and Regulations cited above. Assessments were withheld by deducting the amount of the assessment from the check issued to the cotton producer. From November 1, 1984 to January 21, 1985, the Debtor collected $130,861.20 in assessments on 62,565 bales of cotton purchased from cotton producers. The Debtor failed to remit this amount to the Board. The collection of cotton assessments did not result in the creation of any funds which were segregated from other funds held by the Debtor in its checking account and any such assessments collected were commingled with such funds.

In addition to these stipulations, the record reflects that the Board has paid refunds of some $52,000.00 to producers requesting such from assessments made by the Debtor. The Trustee testified that at the time the petition was filed, the Debtor had no money on hand as all had been on deposit with First State Bank of Covington who had offset them. Since assuming his position, the Trustee has accumulated some $422,361.00 for the estate.

It is the Board's position that the Debtor, in its role as a collecting handler, merely acted as a conduit for transmittal of the collected assessments from the producers to the Board. Therefore, the amount of the unremitted assessments is not properly property of the Debtor's estate.

"The purposes of the bankruptcy law must ultimately govern whether a particular item constitutes property." *Segal v. Rochelle* 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966) quoted with favor in *In re Independent Clearing House Co.* 41 B.R. 985, 998 (Bankr.D.Utah 1984). Section 541(a) of the Bankruptcy Code provides that all interests, legal and equitable, of the debtor in property at the commencement of a bankruptcy case constitutes property of the estate. As its language indicates, section 541 is intended to be broad and to include legal title to property as well as possessory or leasehold interests and property recovered by the trustee. 11 U.S.C. § 541(d); H.R.Rep. No. 595, 95th Cong. 1st Sess. 367–68 (1977); S.Rep. No. 989, 95th Cong.2d Sess. 82-3 (1978), U.S. Code Cong. & Admin.News 1978, p. 5787. The obvious purpose of the statute's broad scope is the creation of as large an estate as possible to be equitably distributed among the debtor's creditors. However, according to the legislative history, where property ostensibly belongs to the debtor but is, in reality, held in trust for another, Section 541 does not apply.

> For example, if the debtor has incurred medical bills that were covered by insurance, and the insurance company had sent the payment of the bills to the debtor before the debtor had paid the bill for which the payment was reimbursement, the payment would actually be held in a constructive trust for the person to whom the bill was owed. This section ... also will not affect various statutory provisions that give a creditor of the debtor a lien that is valid outside as well as inside bankruptcy or that creates a trust fund for the benefit of a creditor of the debtor. See Packers and Stockyards Act § 206, 7 U.S.C. 196.

H.R.Rep. No. 595, 95th Cong. 1st Sess. 368 (1977); S.Rep. No. 989, 95th Cong. 2d Sess. 82 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5868, 6324.

It is apparently this limitation on property of the estate that the Board is relying on in asserting its conduit theory. Examination of the Cotton Research and Promotion Act and the regulations promulgated thereunder renders inapplicable to the instant proceeding the second exception set forth above, i.e. statutory liens and trust funds, as neither are imposed. See 7 U.S.C. § 2101–§ 2118 and 7 C.F.R. § 1205.1–1205.540. Therefore, the question becomes whether the Debtor here merely held legal title to the funds in question so that they

are beyond the reach of the Trustee and thus outside the scope of section 541. The Board supports its assertions with *In re United Milk Products Co.* 261 F.Supp. 766 (N.D.Ill.1966), *In re The GSF Corporation, et al.,* unpub., (D.C.N.J. June 7, 1979, October 14, 1980), and *Stark v. Wickard* 321 U.S. 288, 64 S.Ct. 559, 88 L.Ed. 733 (1944). All three cases involved milk marketing orders issued by the Secretary of Agriculture pursuant to the Agricultural Marketing Agreement of 1937. In all three cases a uniform price to be paid to producers for milk was established by the milk marketing orders and was to be accomplished by distribution of funds from a fund established by the Department of Agriculture. These funds were distributed to "handlers" or purchasers of raw milk for disbursement to the producers in amounts equalling the established minimum prices. In each case, the handler is referred to as a "conduit" of the funds received and to be disbursed. The funds in these "milk" cases were received from a government agency and were readily traceable. See, *In re Commodity Exchange Services Co.* 62 B.R. 868, 871 (Bankr.N.D. Tex.1986). Moreover, and most importantly for our purposes, the "milk cases" funds were not subject to levy or attachment by a judgment creditor. Therefore, in the *United Milk* and *GSF* cases, the funds were determined to not be property of the estate.

 In contrast, the funds at issue in the case at bar were received from individuals and were commingled with the Debtor's operating funds. Although the amount constituting assessments has been calculated, the specific funds are not traceable and because they were commingled were subject to attachment by judgment creditors. This latter factor is significant because in order to better effectuate the bankruptcy law's policy of equitable distribution among creditors, the Trustee of a bankruptcy is granted the status, rights, and powers of a judgment lien creditor at the commencement of the bankruptcy case. 11 U.S.C. § 544; See also, *Matter of O.P.M. Leasing Services, Inc.* 46 B.R. 661, 669 (Bankr.S.D.N.Y.1985) (involving an es-

crow account). As such, given that the Board had no express trust with regard to these funds, nor an escrow account, the Trustee's right to such are superior and the Board's position is that of an unsecured creditor. See *In re Independent Clearing House Co.,* supra, 999; *In re Tinnell Traffic Services,* 41 B.R. 1018, 1020 (Bankr.M. D.Tenn.1984); *In re Gordon's Transports, Inc.,* unpub., Bk. no. 83–20481, Adv. no. 85–0233 (Bankr.W.D.Tenn., Oct. 27, 1986) (concerning the Trustee's powers as opposed to constructive trust assertions). The Trustee is not necessarily limited by the Debtor's pre-petition rights. *In re Independent Clearing House Co.,* supra; *In re Gordons Transports, Inc.,* supra.

In light of the foregoing,

IT IS THEREFORE, HEREBY ORDERED that the Trustee's Objection to the asserted priority claim of the United States of America is sustained, and the Claimant should be and is allowed an unsecured claim of $130,861.20.