**In the Matter of Richard P. BRUNEAU, Patricia A. Bruneau, Debtors.**

**Martin W. HOFFMAN, Trustee, Plaintiff,**

**v.**

**Patricia BRUNEAU, Defendant.**

**Bankruptcy No. 2–91–03635.**

**Adv. No. 2–92–2153.**

United States Bankruptcy Court, D. Connecticut.

Nov. 4, 1992.

Hank Hoffman, Law Offices of Martin W. Hoffman, Hartford, CT, for trustee-plaintiff.

Edward C. Taiman, Jr. and Mark R. Franklin, Germain & Associates, Hartford, CT, for Patricia A. Bruneau, debtor-defendant.

### MEMORANDUM OF DECISION

ROBERT L. KRECHEVSKY, Chief Judge.

### I.

One week after the debtor filed her chapter 7 bankruptcy petition she voluntarily terminated her employment and, by so doing, participated in her employer's "Voluntary Enhanced Exit Program" (the Program). Under the Program the employer agreed to make 52 weekly payments equal to the debtor's yearly base salary in exchange for her job termination and a release of all claims (including any for employment discrimination). The chapter 7

trustee now brings a complaint seeking a determination that the 52 weekly payments represent property of the debtor's estate to be remitted to him. The matter has been submitted upon an abbreviated stipulation of facts and briefs.

## II.

## BACKGROUND

Patricia A. Bruneau (the debtor) and her husband, Richard P. Bruneau, filed their joint chapter 7 petition on November 6, 1991. At that time, the debtor, aged 37, was a 10-year employee of the Hartford Fire Insurance Company (the Hartford).

On September 30, 1991, the Hartford had notified employees, within certain grade levels, of the introduction of the Program (Exhibit A). Under the Program, employees had a one-time option, exercisable on or before November 15, 1991, to terminate their employment on November 22, 1991 and receive payments totaling one year of base salary, either in a lump sum or over a 52-week period. The Hartford reserved the right to reject an individual election based upon the Hartford's needs. If payment was not taken as a lump sum, the employee would be deemed to be on an inactive status and continue to participate in most employee benefit plans, including credit toward the Hartford retirement plan. The payments were stated to be in lieu of any other severance or notice payments. The Program explicitly stated its purpose was cost-cutting, that if employees did not voluntarily "exit", the Program would not be offered again and that if any eligible employee chose not to participate, such employee who was "later impacted by restructuring or reductions will only receive severance pay and notice pay by policy." *Exhibit A.*

The debtor, on November 13, 1991 (one week after the filing of her bankruptcy petition) notified the Hartford of her election to terminate her employment. She thereby became entitled to about $20,000, which she chose to receive over a 52 week period. Martin W. Hoffman, the chapter 7 trustee, on April 23, 1992, filed the present complaint contending that although the debtor's election to participate in the Program took place postpetition, her right to participate existed prepetition, was based upon the debtor's prepetition services and, accordingly, funds due the debtor under the Program are property of the debtor's estate.

## III.

## DISCUSSION

Bankruptcy Code § 541 entitled "Property of the Estate" provides, in relevant part, that a bankruptcy estate comprises "all legal or equitable interests of the debtor in property as of the commencement of the case ... [and] [p]roceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case."

The trustee relies on *In re Ryerson*, 739 F.2d 1423 (9th Cir.1984) to support his contention that the monies payable by the Hartford are property of the estate. In *Ryerson*, a chapter 7 debtor was employed at the time of filing his bankruptcy petition in 1981 by an insurance company under a written agreement entered into in 1977. The agreement provided that, after one year's employment, the debtor was entitled to an amount (contract value) upon termination or cancellation of the agreement, based upon the extent of certain commissions generated and length of service. Termination was to occur upon the debtor's death, but either party could cancel the agreement by 30 days' prior written notice. Eight months after the filing of the bankruptcy petition, the agreement was cancelled, and the debtor sought a declaratory judgment that the contract-value monies were not property of the estate.

The *Ryerson* court concluded that on the date of the petition, the debtor had accumulated four full years of value under the agreement, that the debtor's right to this value, although contingent as to payment date, was property of the estate in that "the termination or cancellation of the appointment is an event certain to occur."

739 F.2d at 1425. The court then concluded "with no difficulty" that the termination payments were property of the estate "at least to the extent the payments are related to prebankruptcy services." *Id.* The court ruled:

> "[Under § 541] ... earnings from services performed prior to bankruptcy are includable within the bankruptcy estate. Under the Act, the test was whether the after-acquired property was 'sufficiently rooted in the prebankruptcy past and so little entangled in the debtor's ability to make a fresh start that it should not be excluded from property of the estate.' *Segal v. Rochelle*, 382 U.S. 375, 380, 86 S.Ct. 511, 515, 15 L.Ed.2d 428 (1966). The Code follows *Segal* insofar as it includes after-acquired property 'sufficiently rooted in the prebankruptcy past' but eliminates the requirement that it not be entangled with the debtor's ability to make a fresh start." *Id.* at 1426.

I conclude the *Ryerson* result does not determine the present matter. The payments the debtor receives were determined neither by the length of her service nor by a prepetition contract obligation. There was no certainty of any payments based upon job termination at the time of the petition filing. The payments arose from the debtor's postpetition decision to resign from her job and the acceptance of that decision by her employer.

The Program payments are clearly intended as enhanced severance benefits offered generally to sustain employees while they seek other jobs. The debtor was faced with the choices of remaining employed at the Hartford and trust that the Hartford would not terminate her; accept the Program's enhanced benefits to sustain her while she sought employment; or chance being discharged within a short period with substantially fewer benefits compared to those under the Program. That the debtor filed her bankruptcy petition prior to making that decision is understandable and unobjectionable, based upon the thin record submitted in this proceeding.

None of the Bankruptcy Code provisions—*see* § 541(a)(5)—concerning property acquired by the debtor after the commencement of the case apply to the present circumstances. I conclude that the origin and purpose of the Program payments, in terms of the *Segal* formulation, are not sufficiently rooted in the prebankruptcy past to justify that they be included in the debtor's estate. *Cf. Vogel v. Palmer (In re Palmer)*, 57 B.R. 332, 334 (Bankr.W.D.Va. 1986) (Postpetition year-end bonus paid by debtor's employer "sufficiently rooted in postpetition events so as to constitute after-acquired property which would not pass to the Trustee as property of the estate.")

### IV.

### CONCLUSION

The monies being received by the debtor, representing severance payments due from her employer when the debtor postpetition terminated her employment, are not property of the debtor's estate. A judgment will enter denying the claim of the trustee.