In re Syed M. **HUSSAIN,** Debtor.

No. 99–62058 (RTL).

United States Bankruptcy Court, D. New Jersey.

Dec. 5, 2008.

Syed M. Hussain, Debtor Pro Se.

Barry W. Frost, Esq. Teich Groh, for Trustee.

## OPINION

RAYMOND T. LYONS, Bankruptcy Judge.

### INTRODUCTION

The Debtor claims that the proceeds of an attorney malpractice settlement belong to him. The Chapter 7 Trustee disagrees and asserts that the money should be distributed to creditors. Because the alleged malpractice is rooted in pre-bankruptcy events and ripened at the moment the bankruptcy case commenced, the settlement proceeds are property of the estate under Section 541(a) of the Bankruptcy Code. In addition, in an effort to save his house, the Debtor previously argued that the proceeds of the malpractice claim would be sufficient to pay his creditors in full. He is now estopped to argue that the proceeds belong to him and not the estate. The Debtor's motion is denied.

### JURISDICTION

This court has jurisdiction of this case and civil proceeding under 28 U.S.C. § 1334(a) and (b), 28 U.S.C. § 157(a) and the Standing Order of Reference by the United States District Court for the District of New Jersey dated July 23, 1984, referring all proceedings arising under Title 11 of the United States Code to the bankruptcy court. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) as a matter concerning the administration of the estate and 28 U.S.C. § 157(b)(2)(E) to determine whether the proceeds are property of the estate.

### FINDINGS OF FACT AND PROCEDURAL HISTORY

Syed M. Hussain (the "Debtor") initiated this bankruptcy case by filing a voluntary petition under chapter 13 of the Bankruptcy Code on October 25, 1999. He and his wife were co-owners of six pieces of real estate: their residence, a vacant lot, and four residential rental properties. Except for the vacant lot, each property was encumbered by a mortgage and some of the properties were additionally secured by a blanket mortgage. One of the mortgages had matured and the lender initiated foreclosure proceedings. Mr. Hussain had been ill causing a reduction in his employment income. He had some unpaid tax obligations and other unsecured debt and was delinquent on some real estate taxes and mortgage payments on the rental properties.

Mr. Hussain consulted an attorney who recommended filing under chapter 13. While chapter 7 was discussed and rejected, the attorney never discussed chapter 11 as an alternative for Mr. Hussain. A

chapter 13 plan was proposed to modify the mortgages on the rental properties by, *inter alia*, extending the maturity debts. Because his schedules indicated equity in the real estate greater than the sum of his unsecured debts, the plan proposed to pay 100% to unsecured creditors. The lenders objected and the court denied confirmation because the plan could not be completed with the statutory maximum of sixty months. 11 U.S.C. § 1322(d); *In re Hussain*, 250 B.R. 502 (Bankr.D.N.J.2000).

The Debtor discharged this lawyer and hired another attorney. In the meantime, several mortgagees received relief from the automatic stay and the chapter 13 trustee moved to convert the case to chapter 7 on the grounds that the Debtor had failed to propose a feasible plan. The motion was granted and the case was converted to chapter 7 on August 15, 2000.

About a year after his case was converted to chapter 7, Mr. Hussain consulted a lawyer who specialized in plaintiff's legal malpractice. That attorney agreed to pursue a suit against the bankruptcy attorney who had advised Mr. Hussain before filing bankruptcy and who prepared and filed the petition and plan under chapter 13. The malpractice lawyer contacted the Trustee who received court approval to employ the lawyer to pursue the legal malpractice suit. On July 25, 2002, a complaint was filed in state court naming the Trustee as plaintiff.

Meanwhile, the Trustee proceeded to sell the rental real estate and the vacant lot. He delayed selling the Hussains' residence in the hope that the proceeds from the other real estate would be sufficient to pay all creditors in full. When that did not materialize, the Trustee moved to sell the Debtor's interest in his residence together with the interest of the non-debtor spouse. Coincidentally, the mortgagee on the residence moved for relief from the automatic stay because the Hussains were

delinquent on mortgage payments. The Debtor and his spouse, now both represented by the Debtor's third bankruptcy lawyer, objected. Their opposition stated:

> But for the actions of the original attorney in this matter, the debtor and his wife would not have lost everything they jointly owned. Consequently a mal-practice [sic] action has been filed by special counsel for the Trustee against the original attorney....

> Any proceeds from the pending malpractice action will be delivered to the estate and may be sufficient to satisfy the remainder of creditors in this case. Therefore it is the request of the debtor to deny the motion for relief from the stay at this time in an effort to permit special counsel for the Trustee to determine the amount that will be realized as a result of the pending suit.

To resolve the dispute, the Trustee, the Hussains, and the mortgagee entered into a consent order. It provided, *inter alia*, that the Hussains would have until January 15, 2005, to list their residence for sale and until June 30, 2005, to obtain a contract to sell their residence. The Debtor and his spouse failed to meet the deadlines in the consent order, therefore, the Trustee again moved to sell it. Once again Mr. Hussain and his spouse, both represented by counsel, opposed the Trustee. Mr. Hussain filed a certification with the court in which he stated:

> I have filed a lawsuit against that attorney for malpractice and am currently attempting to negotiate a settlement of that case. It is my belief that the matter will stele [sic] for more than $100,000.00. I received an accounting of the funds that the Trustee has in this matter last year. At that time, there was an excess of $130,000.00, in my escrow account for creditors.

By adding the amount of recovery estimated by my malpractice attorney, together with what was being held in escrow, I believe that there is enough money for the Trustee to be able to pay all of the creditors in my bankruptcy and close the case without the need to sell my home. Should the Court feel that the amount of the malpractice recovery is speculative, I respectfully request that this Honorable Court at least grant a temporary postponement of any sale of my home at least until after February 27, 2005 [sic should be 2006], the date that my mal-practice [sic] attorney has informed me is the proposed trial date in that matter.

I believe that if that case can be settled, there will be no need to sell our home, and there will be ample funds available to pay all of the creditors and close the bankruptcy.

Ultimately, the court granted the Trustee's motion and he proceeded to sell the residence.

After pending in state court for several years, the legal malpractice suit settled for a substantial sum. The gross proceeds of the settlement were paid over to the Trustee and the plaintiff's malpractice lawyer's contingent fee was approved by the bankruptcy court, after notice to the Debtor and creditors.

After the legal malpractice claim settled, the Debtor's third bankruptcy law firm filed a fee application. They explained their role:

. . .

4. At the time the Court allowed retention of your Applicant, the Debtor's Chapter 13 filing had been converted to a Chapter 7 in August 2000 and the Debtor had proceeded without representation for approximately one and a half years. The Chapter 7 Trustee had already sold five (5) parcels of income producing real property. The bulk of his debt appeared to be secured.

5. In addition, the Trustee had a legal malpractice action pending against the Debtor's former Chapter 13 attorney from which was expected a substantial settlement. It appeared that, between the sale of the properties and the claims for malpractice, there would be more than sufficient funds to pay creditors in full without the need to sell the Debtor's house.

6. Nevertheless, in July 2003, the Trustee had filed a complaint against the Debtor and his wife seeking sale of their home. A review of their circumstances convinced the Applicant that the Debtor was in need of representation.

7. Also pending was a motion for relief from stay filed by the mortgagee on the Debtor's home. The Debtor was in arrears on his mortgage payments.

. . .

13. Your Applicant reviewed the actions of the Trustee and reviewed the Trustee's accounting with the Debtor. It was clear that the Trustee did not have sufficient funds to pay creditors without either the sale of the Debtor's residence or receipt of a payment on the malpractice action.

. . .

15. Your Applicant objected to the Trustee's motion to sell the Debtor's home in December 2005 in an attempt to gain additional time for the settlement of the malpractice action that would provide the Trustee with the funds necessary to pay creditors. At this time, through the efforts of your Applicant, the Debtor had extended his stay in his home for well over a year without making mortgage payments.

The Trustee responded that the Debtor's attorney should be treated neither as a priority expense of administration under

11 U.S.C. § 507, nor as a prepetition unsecured claim. The applicant agreed. The court approved the counsel fee but ordered that it not be paid by the Trustee until all other allowed claims had been paid in full.

Thereafter, the Trustee proceeded to complete his administration of the case and filed his final accounting. He proposed to pay all remaining claims in full, along with a partial payment to the Debtor's lawyer. Unfortunately, there was no surplus money left over for the Debtor. It was at this point that the Debtor first advanced his position that the legal malpractice cause of action belonged to him and not to his bankruptcy estate.

## *DISCUSSION*

### *Property of the Estate*

 Property of the estate includes causes of action that belong to the debtor. 11 U.S.C. § 541(a)(1); *Brunswick Bank & Trust Co. v. Atanasov (In re Atanasov )*, 221 B.R. 113, 116 (D.N.J.1998). Where the events giving rise to a cause of action are rooted in the pre-bankruptcy activities of the debtor, that cause of action is an asset of the bankruptcy estate. *Segal v. Rochelle*, 382 U.S. 375, 379–80, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966).

 The malpractice complaint filed in state court alleging legal malpractice stated:

... Defendants discussed with the debtor the possibility of either filing a Chapter 13 or Chapter 7 petition, but did not discuss with the debtor the possibility of filing a Chapter 11 petition or any remedies, other than bankruptcy, of curing his debt which may have been available to him....

Defendants were negligent in their representation of the Plaintiff in that they, among other things, failed to advise the Plaintiff of other avenues available to him with regard to his financial difficulties and ultimately proposed a plan on behalf of their client that was patently unconfirmable under the terms of the United States Bankruptcy Code....

Plaintiff's state court attorney retained an expert who opined:

It is my opinion that [the lawyer and law firm] breached their duty of care to Syed M. Hussain in certain instances. These specific instances are as follows:

1. Failure to properly advise Mr. Hussain of his rights to file a Chapter 11 petition....

2. Preparation and filing of a patently unconfirmable Chapter 13 Plan....

3. Failure to Timely Modify the Chapter 13 Plan and Withdrawal of Modified Plan....

The alleged legal malpractice involved the advice to file under chapter 13 of the bankruptcy code, the failure to advise regarding chapter 11, and the filing of a petition under chapter 13 together with a plan that was unconfirmable. All of these events are rooted in the pre-bankruptcy activities of Mr. Hussain culminating with the filing of the chapter 13 petition and plan.

In the case of *Johnson, Blakely, Pope, Bokor, Ruppel & Burns, P.A. v. Alvarez (In re Alvarez)*, 224 F.3d 1273 (11th Cir. 2000), *cert. denied*, 531 U.S. 1146, 121 S.Ct. 1083, 148 L.Ed.2d 959 (2001), the Eleventh Circuit held that a legal malpractice claim arising from the failure to file a petition under chapter 11 rather than chapter 7 accrued at the moment the petition was filed. This led to the conclusion that the malpractice claim was property of the estate. Similarly, in *Winick & Rich, P.C. v. Strada Design Assoc., Inc. (In re Strada Design Assoc., Inc.)*, 326 B.R. 229 (Bankr. S.D.N.Y.2005), the court found that a legal malpractice claim for filing under chapter 11 rather than chapter 7 accrued as of the

filing of the petition and was sufficiently rooted in the Debtor's pre-bankruptcy activities to constitute property of the estate. The attorney's subsequent failure to convert the cases from chapter 7 to 11 did not give rise to a new cause of action but could have served to mitigate the prior malpractice. *Id.*

Both of these cases are analogous to Mr. Hussain's situation where the alleged legal malpractice related to pre-bankruptcy advice and culminated with the filing of the petition and plan under chapter 13. Any post petition failure of the attorney to propose a confirmable chapter 13 plan or convert to chapter 11 did not result in a new claim. The cause of action for alleged legal malpractice is an asset of the bankruptcy estate.

### Harm to Debtor vs. Harm to Estate

■ The Third Circuit has given guidance to determine whether claims against bankruptcy attorneys belong to the debtor or the estate.

> [T]he courts in these cases emphasized that the inquiry often depends on whether the estate or the debtor suffers the harm. Accordingly, only in the post-petition situation where the debtor is personally injured by the alleged malpractice, while the estate is concomitantly not affected, is it appropriate to assign the malpractice to the debtor.

*O'Dowd v. Trueger (In re O'Dowd)*, 233 F.3d 197, 204 (3d Cir.2000).

■ Mr. Hussain argues that he has been devastated by this bankruptcy case. Not only has he lost his investment properties but his residence has been sold as well. Although he is a U.S. citizen, he has been forced to seek refuge abroad. On the other hand, the Trustee points out that without the proceeds of the legal malpractice claim all creditors would not be paid in full.

The chapter 13 plan the debtor had originally filed proposed to pay all creditors in full. He recognized that for any assets to be retained by him, all his creditors had to be paid. After liquidating all of the assets of the estate, including the proceeds of the legal malpractice claim, the Trustee has just enough to pay all creditors in full, but no surplus. Alternatively, if the proceeds of the malpractice claim were given to the debtor, his creditors would come up short.

The directive of the Third Circuit that only where the debtor is injured "while the estate is concomitantly not affected, is it appropriate to assign the malpractice to the debtor" may be directly applied to this case. Since creditors would not be paid in full without the proceeds, the estate must have been affected. Therefore, it is not appropriate to assign any of the proceeds to the Debtor.

### Judicial Estoppel

■ Earlier in the bankruptcy case, the Debtor advocated that the proceeds of the legal malpractice case would be collected by the Trustee and would be sufficient to pay all claims in full. Therefore, the Debtor and his spouse argued, the Trustee would not need to sell their residence and their lender should not be allowed to foreclose. That argument succeeded in allowing the Hussains to remain in their home for over a year despite failing to make mortgage payments for more than that entire occupancy period.

Now, at the conclusion of his bankruptcy case, Mr. Hussain has changed his position. He asserts that the proceeds of the malpractice action belonged to him all along and are not property of the bankruptcy estate. In response, the Trustee raises the argument that Mr. Hussain should be estopped from adopting this contrary position.

When a party asserts a position in a legal proceeding and prevails, the doctrine of judicial estoppel will prevent him from asserting a contrary position after circumstances change. *In re Armstrong World Industries, Inc.*, 432 F.3d 507, 517 (3d Cir.2005). "In deciding whether to apply judicial estoppel, a court considers various factors, including whether the party's position is clearly inconsistent with its earlier position and whether the party changing position would gain an unfair advantage over the opposing party." *Id.; see also New Hampshire v. Maine*, 532 U.S. 742, 749–51, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001). Here, Mr. Hussain's current position is directly contrary to his earlier position that the proceeds of the malpractice claim would be collected by the Trustee to satisfy his creditors. He used it to his advantage to remain in his house without paying the mortgage for over a year. The estate, that did pay the mortgage to prevent a foreclosure, would be prejudiced were Mr. Hussain be awarded the malpractice proceeds at this point. He is estopped to claim those proceeds.

### CONCLUSION

The events giving rise to the legal malpractice claim are rooted in pre-bankruptcy advice and culminated in the filing of the petition and plan under chapter 13. Any harm from the alleged legal malpractice was suffered by the estate before the Debtor suffered any harm. Thus, the proceeds of the legal malpractice claim are property of the estate, not the Debtor.

Futhermore, the Debtor is estopped from presently asserting that the proceeds of the legal malpractice claim belong to him because he previously argued that the proceeds would be sufficient to satisfy all creditors, thus maintaining possession of his residence for an extended period of time. His motion for a determination of ownership of the legal malpractice proceeds is denied.