In re David Browning CANON, Debtor.

Stanley W. WRIGHT, Trustee, Plaintiff,

v.

INTERNAL REVENUE SERVICE,
Defendant.

No. 188–10188–7.
Adv. No. 190–1025.

United States Bankruptcy Court,
N.D. Texas,
Abilene Division.

Aug. 23, 1991.

Thomas Wheeler, Abilene, Tex., for trustee.

Shirley D. Peterson, Asst. Atty. Gen., Louise P. Hytken, Atty. in Charge, U.S. Dept. of Justice, Tax Div., Dallas, Tex., for U.S.

## MEMORANDUM OF OPINION ON TAX REFUND

JOHN C. AKARD, Bankruptcy Judge.

This adversary proceeding is before the court on a complaint filed by Stanley W. Wright, Trustee for the bankruptcy estate of David B. Canon, Debtor. The Trustee seeks turnover of $14,900, overpaid by the Debtor and his wife, Carolyn (the Canons) to defendant, United States of America and its agency, the Internal Revenue Service. The Trustee seeks turnover of this property of the estate in the hands of the Internal Revenue Service (IRS) under § 542 of the Bankruptcy Code.[1] The parties filed cross motions for summary judgment. There are no genuine issues of material fact. The court finds that the Trustee's motion for summary judgment should be granted.

### Facts

On March 31, 1988, David and Carolyn Canon filed a joint income tax return for the year 1987. Through withholding, they paid the IRS $62,887 to be applied to their 1987 tax liability. This amounted to an overpayment of $14,900. On their 1987 return the Debtor and his wife elected to apply this $14,900 overpayment to their 1988 estimated tax liability. On June 1, 1988, the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. On or about July 13, 1988, Stanley Wright (Trustee) received notice of his appointment as trustee in the case which appointment he accepted on July 22, 1988.

The schedules the Trustee received indicated that on the date of filing no refund was due the Debtor. However, at the § 341 meeting of creditors held on September 1, 1988, the Trustee became aware of the $14,900 overpayment made to the IRS. By letter dated September 26, 1988, the Trustee made demand on the IRS for turnover of the $14,900 to the bankruptcy estate. On November 21, 1988, the Trustee received a telephone call from Bill Young of the IRS in which Mr. Young represented that the Canons' 1987 tax return was being audited and that, following the audit, any refund due would be sent to the Trustee's office.[2] However, no monies were ever turned over to the Trustee by the IRS. When the Canons' 1988 income tax was computed, the return reflected that their tax liability was paid in full through withholding and that there was an overpayment of $14,900. The IRS refunded the $14,900 overpayment to the Canons on May 8, 1989. On June 26, 1990, the Trustee filed a complaint in which he requested that the IRS be ordered to pay the sum of $14,900 over to the Trustee. The Canons were not made parties to this adversary proceeding.

### Issues

Initially the court must decide whether an overpayment from the preceding year's excessive withholding which the Canons elected to apply to their estimated tax liability for the year in which the bankruptcy petition was filed (and which was received

---

1. The Bankruptcy Code is 11 U.S.C. § 101 *et seq.* References to section numbers are references to sections in the Bankruptcy Code.

2. The United States asserted that Mr. Young would testify that he does not dispute that the alleged conversation occurred although he has no recollection of such.

in the following year as a refund) is property of the Debtor's estate pursuant to § 541.

Then, if the refund is property of the estate pursuant to § 541, the court must decide whether the IRS can be compelled to turn over the refund to the Trustee.

### Discussion

■ Filing a voluntary petition in bankruptcy creates a bankruptcy estate. Property of that estate is defined by § 541 which states in pertinent part:

(a) The commencement of a case ... [under] ... this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) [a]ll legal or equitable interests of the debtor in property as of the commencement of the case.

(2) All interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is—

(A) under the sole, equal, or joint management and control of the debtor....

Legislative history shows that Congress intended § 541 to be interpreted broadly. The House and Senate Reports stated:

Under paragraph (1) of subsection (a), the estate is comprised of all legal or equitable interest of the debtor in property, wherever located, as of the commencement of the case. The scope of this paragraph is broad. It includes all kinds of property, including tangible or intangible property, [and] causes of action.... The debtor's interest in property also includes "title" to property, which is an interest, just as are a possessory interest, or leasehold interest, for example.

S.Rep. No. 989, 95th Cong., 2d Sess. 82 (1978); H.R.Rep. No. 595, 95th Cong., 1st Sess. 367 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5868, 6323.

The courts followed Congress' lead and defined property of the estate as broadly as possible. *See, e.g., In re Koch*, 14 B.R. 64, 65 (Bankr.D.Kan.1981) stating "The scope of the definition is broad and includes all types of property and rights to property.... At the time an order for relief is filed, virtually all of the debtor's property becomes property of the bankruptcy estate."

The United States points the court to *Georges v. United States Internal Revenue Service*, 916 F.2d 1520 (11th Cir.1990) to support its contention that the $14,900 is not property of the estate because once the Canons elected to apply the overpayment to their 1988 estimated tax liability the election was irrevocable, and a refund of the overpayment could not be claimed during the 1988 tax year.

According to the United States Supreme Court's ruling in *Segal v. Rochelle*, 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966), the Canons' inability to revoke the election and claim a refund of the overpayment during the 1988 taxable year does not remove the $14,900 in question from the property of the estate. In *Segal*, the Supreme Court, applying Texas law, held that a contingent right to a business loss carryback tax refund was property of the bankruptcy estate. *Id.* The court reasoned that the loss carryback refund was "sufficiently rooted in the pre-bankruptcy past and so little entangled with the bankrupts' ability to make an unencumbered fresh start that it should be regarded as 'property'...." *Id.* at 380, 86 S.Ct. at 515. The court dealt with the fact that the refunds were only potential claims when the bankruptcy petition was filed by explaining that to achieve the purpose of a fair distribution of the debtor's property to creditors " 'property' has been construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed (citation omitted)" *Id.* at 379, 86 S.Ct. at 514.

In *Kokoszka v. Belford*, 417 U.S. 642, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974), the United States Supreme Court applied its decision in *Segal* to an individual's tax return and held that an income tax refund attributable to withholdings from earnings prior to filing bankruptcy constituted property of the estate. *Id.* at 646–648, 94 S.Ct. at 2434–2435. *Segal* and *Kokoszka* both were

decided before enactment of the Bankruptcy Code. However, the legislative history of § 541 expressly states: "The result of *Segal v. Rochelle,* 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966), is followed, and the right to a refund is property of the estate." H.R.Rep. No. 595, 95th Cong., 1st Sess. 367 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 82 (1978).

Subsequent Code cases involving income tax returns consistently followed and applied the Supreme Court's ruling in *Segal.* See, e.g., *Doan v. Hudgins (In re Doan),* 672 F.2d 831, 833 (11th Cir.1982) (citing the *Segal* language that a refund is property of the estate even though the amount of the refund does not become fixed until the end of the tax year, and after the date of filing the petition in bankruptcy and stating that the applicability of the holding is not limited to loss carrybacks); *In re Orndoff,* 100 B.R. 516, 517 (Bankr.E.D.Cal.1989) (stating that when dealing with a contingent asset of an income tax refund for the year in which the bankruptcy petition is filed, that portion of the debtor's tax refund attributable to prepetition withholding is considered a part of the estate); *In re Sutphin,* 24 B.R. 149, 150 (Bankr.E.D.Va.1982) (holding that income tax refunds are part of the bankruptcy estate to the extent that such refunds are attributable either to excessive withholding prepetition or to other prepetition income); *In re DeVoe,* 5 B.R. 618, 619–620 (Bankr.S.D.Ohio 1980) (holding that a debtor's estate includes any and all interest in property he owned, claimed, or possessed as of the date of filing his voluntary petition in bankruptcy, including all of the debtor's tax refund attributable to prepetition withholdings).

When the Debtor in this case filed his bankruptcy petition on June 1, 1988, he had the right to a refund of any overpayment which might arise by computation of his 1988 tax return at the close of the tax year. The right to that portion of any refund attributable to payments made before the June 1, 1988, petition date became property of the bankruptcy estate—even though it was a contingent asset which could not be enjoyed until the close of the 1988 tax year. *See Segal,* 382 U.S. at 379, 86 S.Ct. at 515.

The United States cites *In re Mirman,* 98 B.R. 742 (Bankr.E.D.Va.1989) and *In re Turboff,* 93 B.R. 523 (Bankr.S.D.Tex.1988) to support its position that tax liability for a postpetition year is not collectible from the estate. Both *Mirman* and *Turboff* are distinguishable from the instant case. They dealt with the debtor's right under 26 U.S.C. § 1398 to elect to divide his taxable year into two short taxable periods, with the date of the petition serving as the beginning of the second taxable period. *Id.* In the case before the court, the Canons did not elect to divide their taxable year. The United States contends that the Trustee is not entitled to the 1988 refund because the estate has no liability for the Debtor's 1988 taxes. However, liability for unpaid taxes is not at issue here because withholdings made both prepetition and postpetition satisfied the tax liability for the year in which the Debtor filed his Chapter 7 petition. Furthermore, the *Mirman* court cited *In re Sutphin* for the proposition that a trustee has a right to demand an apportioned share of the refund if the debtors are entitled to a refund for the tax year in which the petition is filed. *Mirman,* 98 B.R. at 744.

■ When the court can determine from the record what portion of the income tax refund accrued prior to the filing of the petition, that amount will be determined to belong to the bankruptcy estate. *See In re Edmonds,* 27 B.R. 468 (Bankr.M.D.Tenn. 1983). In the case before the court, the refund due the Debtors' from the 1988 taxes was $14,900. This was the exact amount of overpayment of the Debtor's 1987 taxes which the Canons elected to apply to their 1988 estimated tax liability. This indicates that during 1988 the prepetition and postpetition withholding accurately reflected the Debtor's 1988 estimated tax liability and satisfied that liability in full. Therefore, the total refund is attributable to the excessive prepetition payment made when the Canons elected to apply the 1987 overpayment to their 1988 estimated tax liability. In essence, the application of the 1987 overpayment of $14,900 to the

1988 estimated tax liability was virtually a savings account for the Canons.

The United States relies on *Grant v. United States (In re Simmons)*, 124 B.R. 606 (Bankr.M.D.Fla.1991) to support its argument that when the IRS applied the overpayment to the succeeding taxable year the Debtor no longer had an overpayment for which he could file a claim for refund. Thus, the prepetition tax payment could not be considered a legal or equitable interest of the Debtor in property as of the commencement of the case. However, we are not deciding the Florida issue. There the debtor needed the overpayment which he elected to apply to his estimated tax liability for the year in which he filed his bankruptcy petition to meet his tax liability. In this case the 1987 overpayment which the Canons elected to apply to their 1988 estimated tax liability was not needed for the 1988 taxes and was refunded. In accordance with *Segal* and its progeny, because the refund was sufficiently rooted in the prebankruptcy past, it became property of the estate as defined in § 541. *Segal*, 382 U.S. at 380, 86 S.Ct. at 515.

■ Under Texas law, the refund is community property. *See* Tex.Fam.Code Ann. § 5.01 (Vernon 1975). It is thus property of the bankruptcy estate under § 541(a)(2)(A).

"With the filing of a bankruptcy petition, all property of the debtor, wherever located, is required by §§ 541 and 542 to be delivered to the trustee." *Grant v. United States (In re Simmons)*, 124 B.R. 606, 607. In relevant part, § 542 states:

(a) [A]n entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

■ The IRS is a governmental unit which is, by definition, an entity as the term is used in the Code. *See Nordic Village, infra,* at 1052; § 101(14). Furthermore, nothing in § 542(a) indicates that the Trustee's turnover powers are determined by an entity in possession of property of the estate filing a claim; rather, the entity *"shall deliver"* the property to the Trustee (emphasis added). § 542(a).[3] The case before this court does not turn on a claim by the Trustee against the United States government. It is simply a request by Trustee for the United States to surrender funds belonging to the estate which are held by its agency, the IRS.

The court recognizes that the IRS refunded the $14,900 overpayment to the Debtor. However, the Trustee demanded turnover of the funds while they were still in the hands of the IRS. Subsequent distribution of the refund to the Debtor does not relieve the IRS of its obligation to surrender to the Trustee property of the estate which is in the constructive possession of the IRS.

In an earlier case, *In re Wilson*, this court held that a tax refund which was property of the estate and which the IRS was obligated to deliver to the trustee but which the IRS mistakenly paid twice, once jointly to the debtor and his wife and once to the trustee, was paid to the debtor in error. The trustee was not required to return any portion of the refund. *Holder v. Wilson (In re Wilson)*, 49 B.R. 19, 21 (Bankr.N.D.Tex.1985). Similarly, in the present case, the IRS refunded money to the Debtor which the IRS was obligated to turn over to the Trustee pursuant to § 542. The IRS is not relieved of its obligation to deliver the $14,900 overpayment to the Trustee just because it distributed the funds to the Debtor in error. In *Wilson* the court noted that its holding was without prejudice to the right of the Internal Revenue Service to pursue any of its proper collection remedies against the individual debtor. *Id.*

3. The Sixth Circuit rule is that a trustee may recover transfers to the IRS made postpetition. *IRS v. Nordic Village, Inc. (In re Nordic Village, Inc.)*, 915 F.2d 1049 (6th Cir.1990) *cert. granted,* —— U.S. ——, 111 S.Ct. 2823, 115 L.Ed.2d 994 (1991).

The United States argued that the Trustee did not make timely demand for the overpayment in compliance with a 1980 agreement asserted to exist between the Executive Office for the United States Trustee and the IRS. The United States cited no authority for the proposition that the Trustee was bound by an agreement to which he was not a party. In a sworn affidavit the Trustee stated that he received no notice of the purported agreement until December 1990—six months after he filed the complaint to compel turnover of the overpayment. This informal agreement asserted by the United States is not supported by law, is not contained in either the Rules of Bankruptcy Procedure or the local rules of court, and, insofar as the court is aware, it has never been honored or enforced.[4]

The Trustee made demand on the IRS to turn over the $14,900 as soon as he became aware of the overpayment. When the IRS told him it was auditing the Canons' 1987 income tax return and that any refund would be sent to the Trustee's office conditioned on the outcome of the pending audit, the Trustee obligingly waited to give the IRS the time it needed to complete the audit. There is no evidence that any additional tax was imposed on the Canons as a result of that audit. The court finds that as a matter of law the Trustee was not dilatory in making his demand on the IRS.

## CONCLUSION

The court may grant summary judgment when there is no genuine issue as to any material fact and when the movant is entitled to judgment as a matter of law. Fed. R.Civ.P. 56. In the case before the court, the material facts are not in dispute. The legal issue concerns a refund of taxes overpaid before bankruptcy. The court reaches the following results when it applies the law to these facts.

Pursuant to the United States Supreme Court's ruling in *Segal v. Rochelle,* 382 U.S. 375, 86 S.Ct. 511, the court holds that the overpayment of $14,900 from excessive withholding during the 1987 tax year which the Canons elected to apply to their 1988 estimated tax liability and which was subsequently refunded is property of the Debtor's estate pursuant to § 541(a). The IRS was in possession, custody, or control of the $14,900 overpayment which is property of the estate that the Trustee may use. Therefore, the court finds that the IRS is obligated to deliver the refund from the $14,900 overpayment to the Trustee pursuant to § 542(a).

The United States' motion for summary judgment is denied. The Trustee's cross motion for summary judgment is granted, and the United States Internal Revenue Service is ordered to surrender the $14,900 overpayment which is property of the estate to the Trustee. The court's decision is without prejudice to the right of the IRS to pursue any proper collection remedies against the Canons to recover the $14,900 it improperly distributed.

JUDGMENT ACCORDINGLY.

---

4. The 35 day deadline imposed by the agreement asserted by the IRS fell on July 6, 1988, which date passed before the Trustee was even notified of his appointment in the case.