**In re Jorge HAEDO, Debtor.**

**Bankruptcy No. 94 B 42467 (SMB).**

United States Bankruptcy Court,
S.D. New York.

April 7, 1997.

Stein Riso Haspel & Jacobs, LLP (Joseph A. Haspel, of counsel), New City, NY, for Debtor.

Mary Jo White, United States Attorney for the Southern District of New York (Manvin S. Mayell, Lorraine S. Novinski, Assistant United States Attorneys, of counsel), New York City, for U.S.

## MEMORANDUM DECISION DENYING MOTION FOR RELIEF FROM THE AUTOMATIC STAY

STUART M. BERNSTEIN, Bankruptcy Judge.

The United States of America (the "Government") owes a refund to the debtor Jorge Haedo ("Jorge") and his non-debtor spouse, Christina ("Christina"), for the 1994 tax year. The Government desires to set off the refund against Jorge's (and Christina's) tax liability accruing after the filing of this chapter 11 case. It moves for a declaration that the automatic stay does not prevent it from doing so, but if it does, the Court should grant it stay relief. Jorge opposes the motion.

At issue are the respective interests of the estate, Jorge and Christina in the 1994 refund. These interests may be adverse to

each other. Further, Christina was not served with the motion, and has not appeared.[1] Accordingly, the motion is denied without prejudice to the commencement of an appropriate adversary proceeding.

## BACKGROUND

The facts, to the extent set forth on the motion, are not in dispute.[2] Jorge filed this individual chapter 11 case on May 18, 1994. Christina, his spouse, did not file a petition, and is a non-debtor. As discussed more fully below, Jorge did not exercise his right to bifurcate his 1994 tax year as permitted by the Internal Revenue Code. (Edelman Declaration ¶ 6.) Instead, in 1996, he and Christina filed a joint return for the 1994 tax year, and the return indicated a refund due in the sum of $34,995.00. (*Id.* at ¶ 5.) The Government has not contested the refund, and but for the issues raised in its motion, would presumably have paid it jointly to the Haedos, or at their option, credited it against future tax liability.

In the bankruptcy case, the Government filed an amended proof of claim in the sum of $507,573.54. (*Id.* at ¶ 8; Ex. "B".) The claim represents unpaid responsible officer's liability, under 26 U.S.C. § 6672, for the second quarter of 1993. (*See id.* at ¶ 7.) On or about February 12, 1996, the Government sent a notice to the Haedos advising them that it had set off the refund against this obligation. (*Id.* at ¶ 9; Ex. "C".) Several months later, the Government reversed the set off. The Government continues, however, to hold the refund, and refuses to pay it over to the Haedos. (*Id.* at ¶¶ 10–12.)

On or about February 6, 1997, the Government sent separate notices of proposed assessment to Jorge and Christina concerning additional responsible officer liabilities. (*Id.* at ¶ 13; Ex. "D".) According to these notices, the Government intends to assess the sum of $144,136.89 against Jorge for the fourth quarter of 1994 and $572,046.50 against Christina for the second quarter of 1993 and the first and fourth quarters of 1994. (*Id.* at ¶ 13.) The Government now proposes to apply the frozen refund against their postpetition tax liabilities. (*Id.* at ¶ 14.)

In the current motion, the Government seeks a declaration that the automatic stay, 11 U.S.C. § 362(a), does not apply to the proposed set off, or alternatively, requests relief from the automatic stay to accomplish it. In substance, the Government argues that the refund is not property of the estate. Alternatively, the Government argues that even if it is property of the estate, the Government should be entitled to assert the set off. Jorge takes the contrary position on both points. Christina, who has never been served with the Government's motion, has not appeared in this contested matter.

## DISCUSSION

■ Although the nature and extent of the debtor's interest in property is determined under non-bankruptcy law, whether that interest is property of the bankruptcy estate is determined by bankruptcy law. *In re Prudential Lines, Inc.*, 928 F.2d 565, 569 (2d Cir.), *cert. denied*, 502 U.S. 821, 112 S.Ct. 82, 116 L.Ed.2d 55 (1991); *Crysen/Montenay Energy Co. v. Esselen (In re Crysen/Montenay Energy Co.)*, 902 F.2d 1098, 1101 (2d Cir.1990). In arguing that the 1994 tax refund is not property of the estate, the Government focuses on 26 U.S.C. § 1398. That provision, however, primarily concerns the debtor's liabilities rather than his interests in property.

■ Subject to certain exceptions that are not germane, section 1398 of the Internal Revenue Code permits an individual chapter 7 or chapter 11 debtor to bifurcate his tax year into prepetition and postpetition mini-

---

1. According to the Government's affidavit of service, it also failed to serve Jorge personally as it was required to do. See Fed. R. Bankr.P. 7004(b)(9) (made applicable to contested matters by Rule 9014); 4001(a) (making Rule 9014 applicable to relief from stay motions). Jorge, however, failed to object to the service, and has therefore waived the defect.

2. In support of the motion, the Government proffered the declaration of Charles Edelman dated February 6, 1997 ("Edelman Declaration"). Jorge did not submit a factual response, and he essentially concedes the facts alleged in the Edelman Declaration.

years.[3] The debtor must affirmatively make the election. 26 U.S.C. § 1398(d)(2)(A). If he does, the first miniyear ends the day before the commencement of the case, 26 U.S.C. § 1398(d)(2)(A)(i), the second begins on the petition date, 26 U.S.C. § 1398(d)(2)(A)(ii), and the debtor must file two separate returns for separate parts of the same calendar year. 15 Lawrence P. King, et al., Collier on Bankruptcy ¶ TX2.05[1], at TX2–33 (15th rev. ed. 1996) ("Collier on Bankruptcy"). A non-debtor spouse may join in the election if the debtor and she file a joint return for the first shortened year. 26 U.S.C. § 1398(d)(2)(B).

■ The election (or non-election) affects the Government's bankruptcy claims. If the debtor makes the election, the tax liability attributable to the prepetition year constitutes a priority claim against the estate; but if he does not, the entire liability for the year of the bankruptcy filing is a claim against the debtor but is not collectible from the estate. In re Johnson, 190 B.R. 724, 726 (Bankr. D.Mass.1995); In re Moore, 132 B.R. 533, 534–35 (Bankr.W.D.Pa.1991); In re Mirman, 98 B.R. 742, 745 (Bankr.E.D.Va.1989); In re Turboff, 93 B.R. 523, 525 (Bankr.S.D.Tex. 1988). Here, Jorge never elected to bifurcate his tax year. Accordingly, had Jorge (and Christina) owed taxes for the 1994 tax year, his tax liability would not have been collectible from the estate, but only from Jorge (and Christina) personally.

■ The Haedos, however, do not owe taxes for 1994; they are entitled to a refund. The Government argues, with some logic, that since 1994 tax liability would not give rise to a claim against the estate, the 1994 tax refund cannot be property of the estate. Further, as the right to a tax refund arises at the end of the tax year, Rozel Indus., Inc. v. IRS (In re Rozel Indus., Inc.), 120 B.R. 944, 949 (Bankr.N.D.Ill.1990); In re Conti, 50 B.R. 142, 148 (Bankr.E.D.Va.1985), the Haedos did not become entitled to the refund until December 31, 1994, a postpetition date. Accordingly, Jorge had no legal or equitable interest in the refund on the petition date,

and hence, the refund is not property of the estate. See 11 U.S.C. § 541(a)(1).

This argument, while logical, departs from the statutory and case law. The starting point is Segal v. Rochelle, 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966). There, the bankrupts filed petitions under the former bankruptcy act on September 27, 1961. Thereafter, the bankrupts obtained loss carry-back refunds for prior years based upon losses suffered during 1961 but prior to the petition date. The trustee contended that the loss carrybacks were estate property and should be turned over to him. The bankrupts maintained that they arose postpetition and belonged to them.

The Supreme Court agreed with the trustee. It held that the loss carry-back refund claim

is sufficiently rooted in the pre-bankruptcy past and so little entangled with the bankrupts' ability to make an unencumbered fresh start that it should be regarded as "property" under § 70a(5).

Id. at 380, 86 S.Ct. at 515. The Court identified two key elements indicating that the right to the refund existed when the petitions were filed. First, the bankrupts had paid the taxes that formed the basis of the refunds in prior years. Second, as of the petition date, the bankrupts were suffering a net operating loss. Id. Even though the refund could not be claimed until after the end of the tax year, and subsequent events during the remainder of the tax year might change the amount of the refund, "postponed enjoyment does not disqualify an interest as 'property.'" Id.

■ Segal v. Rochelle is still the law. Section 541(a) of the Bankruptcy Code defines property of the estate to include all legal and equitable interests of the debtor in property as of the commencement of the case. The legislative history confirms that "[t]he result of Segal v. Rochelle, 382 U.S. 375[, 86 S.Ct. 511, 15 L.Ed.2d 428] (1966), is followed, and the right to a refund is property of the estate." H.R.Rep. No. 95–595, at

---

**3.** The commencement of the case also creates a distinct taxable entity, the bankruptcy estate. See 15 Lawrence P. King, et al., Collier on Bank-

ruptcy ¶ TX2.03[2][a][i], at TX2–13 (15th rev. ed.1996). The issues raised by the Government's motion only concern the debtor's tax liability.

367 (1977); S.Rep. No. 95–989, at 82 (1978). As a result, courts have uniformly held that at least some portion of the refund pertaining to the year of filing—generally the prorated portion attributable to the prepetition portion of the year—is property of the estate. *See, e.g., In re Barowsky,* 946 F.2d 1516, 1518 (10th Cir.1991) (citing cases); *In re Dussing,* 205 B.R. 332, 333 (Bankr.M.D.Fla.1996); *In re Bading,* 154 B.R. 687, 688–89 (Bankr. W.D.Tex.1993). This conclusion proceeds from sounder logic than that offered by the Government: the prepetition portion of the refund represents overpaid withholding taxes that would have been property of the estate had they not been paid over to the Government. *In re Barowsky,* 946 F.2d at 1518; *see Kokoszka v. Belford,* 417 U.S. 642, 647, 94 S.Ct. 2431, 2434–35, 41 L.Ed.2d 374 (1974).

Ordinarily, this would end the analysis. Jorge filed his petition on the 137th day of the year. On a prorated basis, this corresponds to slightly more than $13,000.00 of the refund. However, two factors militate against this conclusion, at least for now. First, some or all of the refund may belong to Christina, and she is not a party to this motion. State law determines each spouses' property rights in a joint federal tax refund. *See, e.g., In re Honomichl,* 82 B.R. 92, 94 (Bankr.S.D.Iowa 1987); *In re Taylor,* 22 B.R. 888, 890 (Bankr.N.D.Ohio 1982). In New York, such rights are decided on a case-by-case basis, taking into consideration tax and domestic relations statutes, the common law, and the circumstances of the marriage. *See Angelo v. Angelo,* 74 A.D.2d 327, 330–34, 428 N.Y.S.2d 14, 16–18 (2d Dep't 1980). It is possible though not probable that the entire refund belongs to Christina. In that event, the Government's motion would be academic.

Second, the portion of the refund may ultimately be allocated by some method other than a *pro rata* basis. For example, the refund may be so rooted in the past that the entire $35,000.00 should be deemed estate property. This would follow if the Haedos had decided to apply an overpayment from the prior year to their 1994 tax liability. *See,*

*e.g., Wright v. IRS (In re Canon),* 130 B.R. 748, 751–52 (Bankr.N.D.Tex.1991). Or the Haedos may have generated the refund by improperly utilizing a net operating loss or other tax attribute that belongs to the estate.[4] *See In re Russell,* 927 F.2d 413, 416–17 (8th Cir.1991).

The parties have not addressed these issues and could not in the absence of Christina and an estate representative other than Jorge. The Court concludes, therefore, that the Government should proceed by adversary proceeding to determine the respective rights of Jorge, Christina and the estate in the refund. *See* Fed. R. Bankr.P. 7001(2) (requiring adversary proceeding to determine the extent of an interest in property). Some courts have ignored the requirement of an adversary proceeding and decided disputed property issues in the context of a motion for relief from the stay. *See, e.g., In re Torrez,* 132 B.R. 924, 935 (Bankr.E.D.Cal. 1991). In addition, parties may, by consent or waiver, litigate through a relief from stay motion a matter normally requiring an adversary proceeding. *See, e.g. In re Pandeff,* 201 B.R. 865, 867–68 (Bankr.S.D.N.Y.1996); *In re Keene Corp.,* 188 B.R. 881, 887 n. 2 (Bankr.S.D.N.Y.1995).

Here, it would be inappropriate to deviate from the procedural requirements dictated by Rule 7001(2). First, while neither party to the motion has objected to the procedure actually used, a necessary party—Christina—is missing. She was not served and never appeared. This highlights the shortcomings of contested matters where it is not always easy to identify the parties to a dispute or determine whether the court has acquired jurisdiction over them. Second, since the interests of Jorge and the estate may be adverse, it may be necessary to appoint an estate representative to protect the estate's interests in the refund.[5] Third, Jorge has contended in this case that the Internal Revenue Service violated the automatic stay and should not be granted relief from the automatic stay for that reason.

---

4. Section 1398(g) of the Internal Revenue Code lists the debtor's tax attributes that pass to the estate.

5. A motion to dismiss or convert this case is currently pending. If the case is converted, the trustee, Jorge and Christina would all have to be joined in the lawsuit.

Jorge's allegations give rise to a damage claim against the Government, 11 U.S.C. § 362(h),[6] which is intertwined with the decision whether to grant stay relief.[7] Under the circumstances, the appropriate practice is to decide all of the issues—the ownership of property, the claim for damages and stay relief—in a single proceeding in which all necessary parties are joined. Accordingly, the Government's motion is denied without prejudice.

**6.** Jorge could not counterclaim for monetary relief in response to the Government's motion for relief from the stay. *See In re Greater Jacksonville Transp. Co.,* 172 B.R. 376, 378 (Bankr. M.D.Fla.1994).

**7.** An inadvertent violation of the automatic stay by the Government does not preclude granting stay relief when the Government asks for it. *Gribben v. United States (In re Gribben),* 158 B.R. 920, 925 (S.D.N.Y.1993) (Leval, D.J.).