In re James W. NICHOLS and Beverly Ann Nichols, Debtors.

David A. Birdsell, Trustee, Plaintiff,

v.

James W. Nichols and Beverly Ann Nichols, Defendants.

Bankruptcy No. 2–02–01744–PHX–RJH.
Adversary No. 03–00722.

United States Bankruptcy Court, D. Arizona.

May 4, 2004.

Terry A. Dake, Esq., Phoenix, AZ, for Plaintiff–Trustee.

Michael J. Fatta, Esq., Glendale, AZ, for Debtors/Defendants.

1. Unless otherwise indicated, all chapter and statutory references are to the Bankruptcy

## OPINION

RANDOLPH J. HAINES, Bankruptcy Judge.

The issue here is whether a debtor's prepetition application of his right to tax refund to postpetition tax obligations constitutes an asset that must be turned over to the trustee pursuant to Bankruptcy Code § 542,[1] even though on the petition date the debtor could not have recovered such asset from the IRS, and it was ultimately used to satisfy postpetition tax obligations. The Court concludes that it was such an asset on the petition date, even though not immediately realizable, and that the Debtor must therefore deliver to the Trustee the value of such property pursuant to § 542(a).

### Background Facts

On January 20, 2002, the Debtors filed their 2001 federal and state income tax returns. The federal return reflected the Debtors had a right to a refund of $2,231.57, and the state return showed a right to refund of $376. Instead of electing to receive such refunds, however, the Debtors elected to apply them to future tax liability. The Debtors filed the present chapter 7 case shortly thereafter, on February 5, 2002.

When the Debtors filed their 2002 tax returns on February 4, 2003, virtually all of the overpayments from 2001 were utilized to satisfy their tax obligations, so that the Debtors received virtually no refund for the 2002 tax year.

The Trustee filed an adversary complaint against the Debtors seeking to recover the amount of the 2001 tax overpayments. The First Amended Complaint asserted essentially two theories in sup-

Code, 11 U.S.C. §§ 101–1330.

port of the relief requested. The complaint asserted that the Debtors' interest in the tax overpayments was property of the estate as of the petition date that must be turned over to the Trustee pursuant to § 542. In addition, the complaint alleged that the transfer to the state and federal governments of the right to a tax refund was made for no consideration while the Debtors were insolvent, or alternatively that the Debtors made the transfer with actual intent to hinder, delay and defraud their creditors, rendering it avoidable pursuant to Bankruptcy Code § 548.

The Trustee moved for summary judgment on his § 542 theory. Debtors responded and cross moved for summary judgment in their favor. The Court took the matter under advisement at the conclusion of oral argument.

### Analysis

The Debtors' principal point in response to the Trustee's complaint and motion for partial summary judgment is that once the election was made to apply the 2001 overpayment to future tax liabilities, the election was irrevocable. The Debtors cite compelling statutory and case law authorities for this proposition,[2] and the Trustee does not attempt to refute it.

█ The Court agrees that the election once made is irrevocable. This means that on the date this petition was filed, 16 days after the Debtors made the election, neither the Debtors nor the Trustee could require the Internal Revenue Service ("IRS") to issue a tax refund to the Debtors simply by revoking the election.

From this undisputed proposition, however, the Debtors argue that because no tax refund could have been obtained on the petition date, there was then no asset that was property of the estate under § 541. Debtors cite a district court opinion and a bankruptcy court opinion in support of this conclusion. *United States v. Pritchard (In re Block)*, 141 B.R. 609, 611 (N.D.Tex. 1992) ("Once they made the election, they no longer had an overpayment for which they could file a claim for refund; the overpayment became an advance payment of the Blocks' 1989 taxes.... Once the overpayment was properly transferred to the IRS pre-petition, it could not become property of the estate, and was not recoverable under Section 542 of the Bankruptcy Code."); *Grant v. United States (In re Simmons)*, 124 B.R. 606, 607–08 (Bankr. M.D.Fla.1991) ("Once debtor made this election, as a matter of law, he no longer had an overpayment for which he could file a claim for refund. Consequently, the debtor's prepetition estimated tax payment cannot be considered a legal or equitable interest of the debtor in property as of the commencement of the case, and such payment is not subject to turnover [by the IRS].").

Because neither the Texas nor the Florida decision is binding precedent for this Court, the Court will begin its analysis with the binding precedent that does exist, the Ninth Circuit's decision in *United States v. Sims (In re Feiler)*, 218 F.3d 948 (9th Cir.2000). *Feiler* was not a § 542 turnover action but rather a § 548 fraudulent transfer action asserted against the IRS with respect to a debtor's election to treat net operating losses ("NOLs") as carry forwards rather than a carryback. The

---

2. 26 U.S.C. § 6513(d) provides that once an election has been made to apply an overpayment of income tax as a credit against estimated tax for the succeeding taxable year, "no claim for credit or refund of such overpayment shall be allowed for the taxable year in which the overpayment arises." *Georges v. United States,* 916 F.2d 1520 (11th Cir.1990) ("the plain meaning of the relevant statute supports the District Court's holding that this election is irrevocable"); *Starr v. Comm'r,* 267 F.2d 148 (7th Cir.1959).

Ninth Circuit held that the trustee's avoiding powers override the otherwise irrevocable nature of that election. *Id.* at 956–57.

Because it was an avoidance action against the IRS, *Feiler* does not determine the significance, for § 542 purposes, of the irrevocability of the debtor's election. This is because the *Feiler* result could easily be reached notwithstanding the irrevocability of the election under applicable nonbankruptcy law. Indeed, most fraudulent transfers are irrevocable by the debtor who made them because they were transfers that were fully enforceable against the transferor under state law. That is precisely why fraudulent transfer law is necessary for creditors to be able to recover such transfers when made by an insolvent debtor without receipt of reasonably equivalent value in exchange, or made with fraudulent intent to hinder, delay or defraud creditors.

But although the Trustee here pled a § 548 cause of action, his summary judgment motion was brought on the § 542 theory alone. Therefore the question is whether the *Feiler* holding contains anything of significance to the § 542 theory. It does, but it does not assist the Trustee. The Ninth Circuit noted that "Pre-election, the right to carry back the NOLs represented simply the right to a tax refund; as in *Segal*, the refund itself was the property interest." *Feiler*, 218 F.3d at 956, citing *Segal v. Rochelle*, 382 U.S. 375, 86 S.Ct.

511, 15 L.Ed.2d 428 (1966). Necessarily, to uphold a fraudulent transfer theory the court had to find that the asset that the debtor transferred was a property interest. In the present case, however, this only means that when the Debtors made their election on January 20, they transferred a property interest. It does not necessarily mean that the Debtors still had any property interest as of the date of the petition.

The Ninth Circuit addressed that question in its next sentence: "After the election, whether the Feilers retained a property interest in the NOLs that were carried forward is irrelevant, because the trustee need not have a property interest in what the debtor *receives* in return for a fraudulent transfer in order to avoid the transfer." *Id.* (emphasis in original). This is certainly true because in the most blatant fraudulent transfers, where the debtor transfers a property interest to a relative for no consideration, the debtor retains no property interest whatsoever, but this fact establishes the fraudulent transfer rather than refuting it. But for the Trustee's § 542 theory here, *Feiler* does not establish that the Debtors had any property interest with respect to the tax overpayment as of the petition date.

But just as *Feiler* does not determine what asset the debtor received in exchange for the fraudulent transfer,[3] neither do

---

**3.** In *Feiler*, the government conceded that the future tax benefits obtained by carrying the NOLs forward were less than and not reasonably equivalent to the value of the tax refund that was relinquished. 218 F.3d at 951. The opinion does not reveal why the government made this concession or how the future tax benefits were valued for this purpose. Footnote 4 of the opinion reflects why that future value may not be reasonably equivalent *for the estate*, but does not explicitly hold that value to the estate is the proper measure. *Id.*

Ordinarily, an individual debtor would receive equivalent value in the future tax benefits, present value considerations aside. *Simmons*, 124 B.R. at 608. This issue does not arise when the future tax benefits flow to someone other than the debtor, as in *Parker v. Saunders (In re Bakersfield Westar, Inc.)*, 226 B.R. 227 (9th Cir. BAP 1998) (prepetition revocation of corporate debtor's sub S election held avoidable). The seminal case on this point, *Gibson v. United States (In re Russell)*, 927 F.2d 413, 419 (8th Cir.1991), was

*Block* and *Simmons* determine that the debtor received nothing of value simply because the transfer was irrevocable. The proper issue here is not whether the Debtors or the Trustee could recover the tax refund that was relinquished prepetition, but whether the Debtors received anything of value for such relinquishment, and continued to hold such value as of the petition date.

█ In fact, the Debtors did receive something of value in this case by electing to apply the overpayment to future tax liabilities: the Debtors received a credit that would either reduce future tax liabilities or, if there were no such tax liabilities in the succeeding tax year, result in a refund. That credit, although not immediately realizable by the Debtors on the petition date, was an asset that would ultimately realize for the Debtors a dollar-for-dollar value at the conclusion of the succeeding tax year, except only for the *de minimis* time value of money.

█ Nothing in § 541 requires that the debtor's interest be immediately capable of being liquidated into cash in order to constitute property of the estate. To the contrary, § 541(c)(1) provides that such debtor's interests become property of the estate even though they could not be liquidated and transferred by the debtor under applicable nonbankruptcy law. Moreover, § 542(a) is not limited to property that the debtor can transfer in kind to the trustee, because it alternatively requires that the "value of such property" be delivered to the trustee. As the Supreme Court held in *Segal*, an interest is not outside of property of the estate simply "because it is novel or contingent or because enjoyment must be postponed." 382 U.S. at 379, 86

S.Ct. 511. *Feiler* makes clear that *Segal's* holding to this effect is still good law under the Code and in the Ninth Circuit. *Feiler*, 218 F.3d at 955. Consequently the tax credit that the Debtors had as of the petition date was property of the estate, and the Debtors must turn over to the Trustee its value.

This analysis is consistent with that of the Texas Bankruptcy Court in *Wright v. IRS (In re Canon)*, 130 B.R. 748 (Bankr. N.D.Tex.1991), which concluded that in essence the application of a tax overpayment to a subsequent year's tax liability "was virtually a savings account" for the debtor. *Id.* at 751–52. Actually, a better analogy would be to a certificate of deposit that the debtor could not cash on the petition date but that would be realizable subsequently, or to an annuity. In either case, the credit, or the account, was an asset of the estate having ascertainable value on the petition date, though realizable subsequently, and under § 542 the debtor must pay the trustee the value of such asset.

This Court disagrees with the *Canon* court's effort to distinguish *Simmons* on the basis that in *Simmons* the overpayment was necessary to satisfy the subsequent year's tax liability, whereas in *Canon* it was refunded to the debtor. That is a distinction without a difference. In either case, the credit that the debtor established with the IRS was an asset that was ultimately realizable by the debtor either in the form of a refund or in the form of payment of tax liability in the subsequent year. The *Canon* court should have simply recognized that the *Simmons* court failed to consider that analysis rather than attempting to distinguish the *Simmons* case on the facts.

remanded for a determination of whether the debtor's election was made with intent to hinder, delay or defraud creditors, and did

not address the reasonably equivalent value issue.

*Canon* may be regarded as having been overruled by *Block,* a decision one year later by the District Court also located in the Northern District of Texas. For that reason, some courts have declined to follow *Canon. Morton v. United States (In re Metcalf),* 2001 Bankr.LEXIS 1231, *5, 2001 WL 1203344, *2 (Bankr.N.D.Tex. 2001). In fact, however, *Block* failed to note the significant difference between a trustee's seeking recovery from the IRS and seeking a recovery from the debtor.

*Block* relied on *Simmons,* in which recovery was sought solely from the IRS, not from the debtor. *See Simmons,* 124 B.R. at 606. Because the election to apply a refund to subsequent year's taxes is irrevocable, and because it is regarded as a prepayment of future tax liability, the *Simmons* court may have been entirely correct in concluding that the trustee may not recover *from the IRS* on a § 542 theory. That is an issue we need not decide here, where the IRS is not a defendant.

In *Block,* however, the trustee's § 542 complaint was asserted against *both* the IRS and the debtor. Relying on *Simmons,* the *Block* court reasoned that "Once the overpayment was properly transferred to the IRS pre-petition, it could not become property of the estate, and was not recoverable under Section 542 of the Bankruptcy Code." *Block,* 141 B.R. at 611. With little additional analysis, the *Block* court concluded that because the "tax refund was not property of the estate under Section 541 when the bankruptcy petition was filed, the trustee is not entitled to those funds." *Id.* In reversing the bankruptcy court's judgment holding both the debtor and the IRS jointly and severally liable for that tax refund, the court failed to distinguish the trustee's rights against the debtor as compared to the trustee's rights against the IRS.

As noted above, the *Simmons* court may have been correct that the IRS cannot be compelled to turnover an advance payment of future taxes, on a § 542 theory. But the debtor still had a credit with the IRS for which the debtor would ultimately obtain a dollar-for-dollar benefit, ignoring the nominal present value discount. *Segal* necessarily implies that credit was property of the estate on the date of the petition, and § 542(a) unequivocally requires the debtor to deliver to the trustee "the value of such property," even if the property itself is not transferable. This important distinction means that *Metcalf* may be correct in following *Block* when the only defendant was the IRS, but that such reliance on *Block* is misplaced when the defendant is the debtor, such as in *Traina v. Orrill (In re Orrill),* 226 B.R. 563 (Bankr.E.D.La.1997), and as in this case.

For the foregoing reasons, the Court grants the Trustee's motion for summary judgment. The Debtors are liable to the Trustee for the value of the credits that the Debtors had established with the IRS and the State of Arizona as of the petition date resulting from the Debtors' prepetition election to apply their right to tax refunds to their future tax liabilities. The Trustee is requested to lodge an appropriate form of judgment.