# United States Court of Appeals for the Federal Circuit

2006-5060

AVTEL SERVICES, INC.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee,

and

KING AEROSPACE, INC.,

Defendant-Appellee.

Howell Roger Riggs, Dick, Riggs, Miller & Stem, LLP, of Huntsville, Alabama, argued for plaintiff-appellant. With him on the brief were David H. Stem, Jr., and Patrick O. Miller. Of counsel was Timothy Paul Pittman.

Elizabeth A. Holt, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee, United States. With her on the brief was Peter D. Keisler, Assistant Attorney General, and Todd M. Hughes, Assistant Director.

Marshall J. Doke, Jr., Gardere Wynne Sewell LLP, of Dallas, Texas, argued for defendant-appellee, King Aerospace, Inc. With him on the brief was Stacy R. Obenhaus.

Appealed from: United States Court of Federal Claims

Judge Marian Blank Horn

.

# United States Court of Appeals for the Federal Circuit

2006-5060

AVTEL SERVICES, INC.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee,

and

KING AEROSPACE, INC.,

Defendant-Appellee.

Before NEWMAN, RADER, and PROST, <u>Circuit Judges</u>.

Dissenting opinion filed by <u>Circuit Judge</u> NEWMAN.

PER CURIAM.

## <u>ORDER</u>

Avtel Services, Inc. (Avtel) seeks a resolicitation or reevaluation of a contract that was awarded to King Aerospace, Inc. by the United States. This court only possesses jurisdiction over Avtel's appeal if it can be awarded the relief it seeks. Avtel has made a general assignment to another party to liquidate its assets and distribute the proceeds to creditors and admits that it does not have the resources necessary to perform the contract.

2006-5060

Accordingly,

IT IS ORDERED THAT:

This appeal is dismissed for want of jurisdiction based on Avtel's bankruptcy status.

FOR THE COURT

_August 21 2007_____
    Date

_s/Jan Horbaly_____
Jan Horbaly
Clerk

# United States Court of Appeals for the Federal Circuit

2006-5060

AVTEL SERVICES, INC.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee,

and

KING AEROSPACE, INC.,

Defendant-Appellee.

NEWMAN, Circuit Judge, dissenting.

I respectfully dissent. Avtel's insolvency did not extinguish its existing claims upon the Assignment for the Benefit of Creditors under California law. The claims of an insolvent entity do not disappear, whether the insolvent entity is seeking to reorganize or to continue or to dissolve. To the contrary, the claims survive for the benefit of the insolvent entity and its successors and creditors. See, e.g., Segal v. Rochelle, 382 U.S. 375, 380 (1966) (the bankruptcy filing did not extinguish any pre-petition cause of action). The "anti-assignment" stricture of government contracting law does not apply to such assignments. See United States v. Shannon, 342 U.S. 288, 292 (1952) ("In the ninety-nine-year history of the Anti-Assignment Act, this Court has recognized as exceptions to the broad sweep of the statute

two types of voluntary assignments (aside from voluntary assignments made after a claim has been allowed): transfers by will, . . . and general assignments for the benefit of creditors.") (citations omitted). From the panel majority's holding that this Assignment "moots" the claim and this appeal, I must, respectfully, dissent.

This bid protest claim was filed by Avtel after it lost the bid for renewal of a contract of which it was the incumbent contractor. Avtel asserts that this procurement was accompanied by various violations of the Procurement Integrity Act, 41 U.S.C. §423(b) ("Prohibition on obtaining procurement information"). Exposure of violations, instituted by persons with an interest in the procurement, serves a principle purpose of 31 U.S.C. §3551, the Competition in Contracting Act (protest may be "based in whole or in part on improprieties concerning the award of the contract"). While the case was pending in the Court of Federal Claims Avtel entered into an Assignment for the Benefit of Creditors under California law and suspended its activities, in accordance with California Revenue and Tax Code §23301. Avtel has since obtained a Certificate of Revival restoring it to active corporate status. The Assignment did not extinguish the claims that Avtel possessed; to the contrary, the continuation and prosecution of existing claims is contemplated by the California statute. With all respect to my colleagues on this panel, they are incorrect in holding that the Assignment rendered "moot" Avtel's pending bid protest.

The Court of Federal Claims and the district courts have jurisdiction of objections by an interested party "to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or proposed procurement." 28 U.S.C. §1491(b). An "interested party" includes an "actual or prospective

bidder or offeror whose direct economic interest would be affected by the award of the contract or by failure to award the contract." E.g., Am. Fed. of Gov't Employees v. United States, 258 F.3d 1294, 1302 (Fed. Cir. 2001) (quoting 31 U.S.C. §3551(2)). Avtel was an actual bidder, and the adverse effect on its direct economic interest is made crystal clear by its ensuing insolvency.

The government does not dispute that Avtel was prejudiced by loss of the contract; nor, however, does the government mention the alleged improprieties. Instead, the government argues that "the case is moot" because "there is no reasonable expectation the violations it alleged will recur, since Avtel [is going out of business]." Gov't Supplemental Brief at 9 n.4. My colleagues agree, and deny Avtel the opportunity to press its claim on the ground that Avtel could not now perform the contract. Thus the charges of wrongdoing in the award of this contract are insulated from scrutiny, and access to remedy denied, on the ground that the injury to Avtel rendered Avtel incapable of complaining about it. That is not the law.

An entity with a claim against the United States does not lose the right to press that claim if insolvency intervenes. When Avtel filed the bid protest, it requested that the contract be awarded to it or reprocured, a remedy that would have been available had the agency acted favorably. My colleagues' ruling that Avtel cannot now perform the contract, a position that Avtel disputes, has no relation to whether Avtel could have performed the contract at the time it lost the bid. Contrary to the statement in the Court's Order, Avtel states that it can indeed perform the contract, as it did before its renewal bid was rejected. Avtel's former Chief Executive Officer Telford Allen, III, states in his February 2007 declaration: "In the event that an award of the ARL contract is directed to Avtel, the

stockholders and management plan to . . . have the assets of Avtel restored to the corporate entity [and] Avtel, upon reassignment of assets . . . can meet all of the responsibility criteria established by FAR 9.103, FAR 9.104, et. seq." Indeed, performance capability is not disputed. The holding that no protest can be made is an incorrect implementation of the bid protest statute, which is designed to expose improper bidding practices in government procurement and to protect the victims of such improprieties. Nor is it a correct implementation of the insolvency statutes, whose purpose is to protect both the insolvent entity and its creditors.

Precedent illustrates that in successful bid protests the contract is often well into performance by the wrongful awardee by the time the protest has been finally resolved in court. The issue is not Avtel's ability to perform a contract whose time of performance has past, but whether Avtel is entitled to relief if its bid protest arguments are correct. See 28 U.S.C. §1491(b)(2):

> (2) To afford relief in such an action, the courts may award any relief that the court considers proper, including declaratory and injunctive relief except that any monetary relief shall be limited to bid preparation and proposal costs.

In filing its complaints starting in 2004, Avtel asked that the bid be awarded to it or subjected to reprocurement. This does not moot any relief "that the court considers proper," an issue not explored. It has not been explored whether "[t]he Government has prematurely predicted that Avtel is without the ability to obtain the necessary resources to accept an award of the contract in this case." Avtel's supplementary filing, February 20, 2007. In Bender Shipbuilding & Repair Co. v. United States, 297 F.3d 1358, 1362 (Fed. Cir. 2002) the court sustained the award of a contract to a bidder that was in Chapter 11 Bankruptcy at the time of the award.

"The burden of demonstrating mootness 'is a heavy one.'" County of Los Angeles v. Davis, 440 U.S. 675, 631 (1978) (quoting United States v. W.T. Grant Co., 345 U.S. 629, 632-33 (1953)). To succeed in a bid protest, the protestor must establish that it was prejudiced by erroneous or improper procedures. However, "[t]o establish prejudice, a protestor is not required to show that but for the alleged error, the protestor would have been awarded the contract." Data Gen. Corp. v. Johnson, 78 F.3d 1556, 1562 (Fed. Cir. 1986). See Statistica, Inc. v. Christopher, 102 F.3d 1577, 1581 (Fed. Cir. 1996) ("To establish competitive prejudice, a protester must demonstrate that but for the alleged error, there was a *substantial chance* that [it] would receive an award-that it was within the zone of active consideration.'") (emphasis in original). These factual issues require review; the presence of unresolved issues negates a ruling of "mootness":

> [J]urisdiction, properly acquired, may abate if the case becomes moot because (1) it can be said with assurance that "there is no reasonable expectation . . ." that the alleged violation will recur, . . . and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.

County of Los Angeles v. Davis, 440 U.S. at 631. Neither of these criteria has been met. As to the first criterion, if there were indeed the alleged improprieties, concealing them is the least likely way to prevent recurrence of the violation. As to the second criterion, the interim events included Avtel's insolvency, whose effects surely have not been "completely and irrevocably eradicated."

Further, Avtel's situation in the context of the California proceedings has not been explored. Paragraph 1 of that "General Assignment" includes "all choses in action . . . in which Assignor has an interest." Paragraph 5 states that: "Assignee in its own discretion, may determine whether to continue all or a part of the business operations, or to liquidate

assignor's assets." Paragraph 8 states that the Assignee has "the right and power to institute and prosecute legal proceedings in the name of Assignor, the same as if the Assignor itself had instituted and prosecuted such proceedings or actions." The panel majority's ruling that "the settlement agreement does not provide for ISG [the Assignee] to accept obligations for contracts not yet in existence" is of doubtful relevancy, for the Assignment is all-inclusive and it is not known what remedy would ensue if the protest were sustained. The protester is not required to affirmatively request only the minimal monetary relief in order to avoid "mootness." The judicial fashioning of appropriate relief, should the protest be sustained, is not before us. It is not correct to rule that the protest cannot be made at all.

Today's ruling of mootness has potentially broad consequences for government contracting, for it holds that if the losing bidder is pressed into insolvency while its protest is pending, the right to protest a wrongful award disappears. This is not correct law, and it subverts legislative policy. I respectfully dissent.